## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Samuel Calderon, individually | ) | Civil Action No.: 8:10-cv-01958 RWT |
| and on behalf of other similarly | ) | |
| situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEICO General Insurance Company, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE

## INTRODUCTION

Defendants' Response to Plaintiffs' Motion misses the forest through the trees—courts regularly grant conditional certification motions under section 216(b) of the Fair Labor Standards Act in misclassification cases such as this to allow for a more efficient and economical discovery process, and to dispose of common issues in a cohesive and orderly manner. All that is needed to sustain such a motion, and begin this efficient collective process, is a simple showing that the identified related employees are affected in a similar manner by a common policy. Plaintiffs need not present any more detailed information beyond that at the initial notice stage. Demanding otherwise would amount to premature consideration of the merits.

Defendants, nevertheless, unjustifiably attempt to jump straight to the second step of the two-part process employed by courts in this District in granting class certification. And in further attempt to take the Court's "eye off the ball," Defendants devote an entire section of their Response to argue the "likelihood of success on the merits" even though such a discussion is wholly irrelevant at this conditional certification motion stage. Such an obvious effort to hold

Plaintiffs to a higher standard than is necessary or to raise concepts that have no bearing on the question of whether the putative class members are "similarly situated" to the named Plaintiff is inappropriate and should be eschewed by the Court.

For these, and all the reasons that follow, Plaintiffs' Motion for Conditional Certification should be granted, and notice should issue to the class.

## ARGUMENT

**I.     PLAINTIFFS HAVE MET THE STANDARD REQUIRED AT THIS STAGE AND THEIR MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE SHOULD THEREFORE BE GRANTED**

Plaintiffs' Memorandum in support of this Motion sufficiently alleges that Plaintiffs are similarly situated with the proposed class. Defendants, however, attempt to distract the Court from the proper analysis by ignoring the purpose of the notice stage, pointing out inapposite employment variations, and hastily arguing the merits of the case.

### A.   The Lenient Standard for Conditional Certification Requires Nothing More Than a "Relatively Modest Factual Showing"

The threshold question in determining whether to conditionally certify a class in the notice stage is whether the plaintiffs have successfully demonstrated a class of similarly situated potential plaintiffs. Montoya v. S.C.C.P. Painting Contractors, Inc., No. 07-455, 2008 WL 554114, at *2 (D. Md. Feb. 26, 2008). Because this determination occurs at the early stages where there is minimal evidence available, the "similarly situated" determination is made using a "lenient standard" and weighs in favor of granting conditional certification. Robinson v. Empire Equity Group, Inc., 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009); Yeibyo v. E-Park of DC, Inc., 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008).

More specifically, the inquiry is "less stringent than the ultimate determination whether the class is properly constituted," as plaintiffs only have to make a "modest factual showing" that

they were subject to "a common policy or plan that violated the law." <u>Marroquin v. Canales</u>, 236 F.R.D. 257, 259-260 (D. Md. 2006). In addition, one court in this District has even stated that "the *potential* misclassification of the plaintiffs, in violation of the FLSA's mandate that "employee" be interpreted broadly, could be enough for class certification." <u>Montoya</u>, 2008 WL 554114, at *3 (D. Md. Feb. 26, 2008) (citing <u>Lee v. ABC Carpet & Home</u>, 236 F.R.D. 193, 197-198 (S.D.N.Y. 2006) (emphasis added)).

1.   <u>Plaintiffs and Putative Class Members Are Similarly Situated Because They All Investigate Potentially Fraudulent Claims and Report the Facts to Final Decision-Makers</u>

Plaintiffs have produced sufficient evidence to confirm that Defendants' Security Investigators are similarly situated. All Security Investigators perform the same job duties. Indeed, as the Director of Defendants' Special Investigation Unit concedes, investigators have the same primary duty and "[t]hey spend the majority of their time on investigations."[1] In conducting those investigations, all Plaintiffs perform their tasks under the same performance standards. In particular, though Plaintiffs are able to interview witnesses, obtain statements, take photographs, and confer with local law enforcement and National Insurance Crime Bureau agents to help them in their investigations,[2] they do not have the authority to decline a referral,[3] hire outside investigators for assistance,[4] nor decide whether additional steps need to be taken after an initial investigation is complete.[5]  All Security Investigators simply report the facts;[6] they cannot decide whether to pay or deny a claim,[7] determine if further investigation or an

---

[1] Dkt. 24, p. 3.
[2] <u>See</u> Dkt 23-5, Exhibit 3, Plaintiff Declarations at ¶ 8.
[3] <u>See</u> Dkt 23-5, Exhibit 3, Plaintiff Declarations at ¶ 7.
[4] <u>See</u> Dkt 23-5, Exhibit 3, Plaintiff Declarations at ¶ 8.
[5] <u>See</u> Dkt 23-5, Exhibit 3, Plaintiff Declarations at ¶ 10.
[6] <u>See</u> Dkt 23-5, Exhibit 3, Plaintiff Declarations at ¶ 9.
[7] <u>Id.</u>

examination under oath is warranted,[8] nor approve or choose to send the claims examiner his or her final report.[9] Those facts plainly establish that Defendants' Security Investigators are similarly situated because they share the same job duties and responsibilities.

> 2. Plaintiffs Have Demonstrated That They and Other Putative Class Members were Misclassified in Accordance with a Company-Wide Policy that Violates the FLSA

Defendants do not contest that, exclusive of California, they have classified their Security Investigators as "exempt" employees and failed to pay them overtime compensation for hours worked over forty in a workweek.  That concession is attributable to the strength of Plaintiffs' Complaint and declarations—in combination with Defendant's recent letter to Security Investigators[10]—all of which establish that Security Investigators are compensated the same (in that they are paid an annual salary)[11] and, despite routinely working over forty hours per week to investigate all their files, are never paid overtime compensation since they are all classified "exempt" employees.[12] Plaintiffs have made more than an adequate showing that they together were victims of a common policy or scheme or plan that violated the law.  Plaintiffs' Motion for Conditional Certification should therefore be granted.

**B.  Defendant Ignores the Purpose of Conditional Certification**

By arguing that a decision to grant conditional certification "may be irreversible as a practical matter,"[13] Defendants overlook the purpose underlying the initial notice stage: "To effectuate the remedial purpose of the act, it is well settled that [judges] have the discretion, in appropriate cases, to allow such claims to proceed as a collective action and to facilitate notice to

---

[8] See Dkt 23-5, Exhibit 3, Plaintiff Declarations at ¶ 10.
[9] Id.
[10] See Dkt 23-8, Exhibit 6.
[11] See Dkt 23-5, Exhibit 3, Plaintiff Declarations at ¶ 3.
[12] See Dkt 23-5, Exhibit 3, Plaintiff Declarations at ¶ 11-13.
[13] Dkt. 24, p. 13.

potential plaintiffs." <u>Marroquin</u>, 236 F.R.D. at 259.  This exercise of discretion by Maryland federal court judges "*typically* results in 'conditional certification' of a representative class." <u>Robinson</u>, 2009 WL 4018560, at *2 (quoting <u>Yeibyo</u>, 2008 WL 182502, at *7) (emphasis added).

Conditional certification motions like this one are typically granted for several reasons. First, courts recognize the importance of having "employees receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." <u>Hoffman-LaRoche Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989). Second, courts understand that this is just the first of a two-stage framework; after sufficient discovery has been completed, defendants "may file motion[s] to decertify the class," and at that point a "higher standard" to determine the similarly situated requirement exists. <u>Yeibyo</u>, 2008 WL 182502, at *7.

Despite the fact that they will have an opportunity to move to decertify the class after discovery ends, Defendants suggest that the Court only grant conditional certification if it is "confident, from the beginning, that the named and opt-in plaintiffs are sufficiently 'similarly situated' that their claims can be effectively litigated."[14] The rule applicable at the notice stage, however, is well-established in this District: plaintiffs only have to make a "modest factual showing" which is analyzed by judges under a "lenient standard." <u>Robinson</u>, 2009 WL 4018560, at *2.

Defendants also argue that granting conditional certification will "compound the cost of discovery, especially for defendants."[15] Such a conclusory statement should be disregarded, as

---

[14] <u>Id.</u>  Defendants' Director of SIU admitted in his deposition on November 19 that the job duties of Security Investigators are "similar."
[15] <u>Id.</u>

both parties bear the expenses associated with gathering the relevant factual information of a case, an expense which is necessary to enforce and vindicate employees' rights under the FLSA.

Defendants also contend that "[t]he argument that the employer's decision to classify a position as exempt creates the requisite degree of similarity fails to account for the difference between a management decision and a lawsuit."[16]  But that is not an argument; it's the law—"[a] group of potential plaintiffs are 'similarly situated' when they together were victims of a common policy or scheme or plan that violated the law." Marroquin, 236 F.R.D. at 260.[17]

## C. Defendants Exaggerate Alleged Factual Distinctions Among the Investigators' Duties

Plaintiffs need only be similarly situated "with respect to their job requirements and with regard to their pay provisions; the positions *need not be identical*." Yeibo, 2008 WL 182502, at *7 (emphasis added).  Defendants, nevertheless, believe that close scrutiny of each individual investigator's duties is required at this stage. To support this incorrect assertion, Defendants assert that Plaintiffs have only offered broad generalizations which are contradictory in nature, as evidenced by lead plaintiff Sam Calderon's statement that he could not deny claims while his reports actually show he obtained withdrawals.[18] Such an argument is an obvious and desperate attempt to play around with semantics. Obtaining a withdrawal is completely distinguishable from having the authority to deny a claim. In fact, the Director of Defendants' SIU recently admitted in his deposition that claims adjusters, not investigators, decide whether to pay or deny a claim.[19]

---

[16] Dkt. 24, p. 14-15.
[17] See also Montoya, 2008 WL 554114, at *2; Camper v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 520 (D. Md. 2000).
[18] See Supplemental Declaration of Samuel Calderon.
[19] See Declaration of Matthew H. Morgan.

Likewise, Defendants unpersuasively assert that Plaintiffs' job duties can vary depending on their location, pointing to the fact that investigators in Florida "spend a high proportion of their time on PIP claims" and their jobs "tend to take longer than investigations elsewhere."[20] This distinction (if accurate) is only in quantity; it does not illustrate a legally cognizable difference in the tasks generally completed by investigators. Plaintiffs' Complaint and Declarations, as well as Defendants' own characterization of Plaintiffs' job duties, sufficiently show that Defendants' Security Investigators across the country complete the same or similar duties, regardless of the *amount* of work they do.

What's more, Defendants maintain that it would be difficult to calculate damages on a collective basis because Plaintiffs were not required to track their hours. This argument is irrelevant. Because Defendants misclassified their Security Investigators as exempt, they had a duty to make and maintain employee records, including timesheets. 29 U.S.C. § 211(c). Courts in this District have stated in multiple cases that defendants, "'[h]aving not maintained adequate records of their workers, as is required by law, [ ] are not in a strong position to oppose the reasonable notice efforts proposed [by plaintiffs] and approved herein.'" Montoya, 2008 WL 554114, at *4 (quoting Marroquin, 236 F.R.D. at 262 n. 19).

Plaintiffs' Motion for Conditional Certification and Judicial Notice is reasonable, and the minimal factual variations that Defendants exaggerate—and which commonly arise during collective FLSA suits—are not unworkable.

### D. Defendants' Arguments Concerning the Merits of the Case are Wrong and Inappropriate at this Point in Litigation

At the initial notice stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Lynch v. United Servs.

---

[20] Dkt. 24, p. 17.

Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citing Barrus v. Dick's Sporting Goods, Inc., 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006)). In fact, courts "should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." Lynch, 491 F. Supp. at 368 (citing Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus…is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated…with respect to their allegations")).

In light of the law described above, it is not difficult to see that Defendants are making a premature attempt to argue the merits of the case.  All that Plaintiffs have to show at this stage is that they are similarly situated with regard to their claims. Plaintiffs' initial brief makes a sufficient showing, and Steven Rutzebeck, the Defendant's Director of Claims Security/Special Investigations Unit, even stated in his affidavit that Plaintiffs and putative class members all spend "the majority of their time on investigations;"[21] they "work out of their homes;" "[t]hey are supplied with a company car, computer and telephone;" "[t]hey receive their assignments electronically;" and "[t]heir work day consists of desk work using their computers and field work."[22]  These facts illustrate that no real distinction exists among the Plaintiffs and their duties. They therefore meet the similarly situated requirement for conditional class certification.

Additionally, even if the merits were relevant here, Plaintiffs are confident that this Court will find that all SIU investigators have been misclassified as exempt administrative employees under the FLSA. Together with Plaintiffs' Complaint and Declarations—which tend to prove that they and other putative class members were misclassified in accordance with a company-wide policy that denied them overtime pay in violation of the FLSA—a 2005 Opinion Letter

---

[21] See Dkt 24-1, Exhibit 1, Rutzebeck Afft. at ¶ 3.
[22] Id. at ¶ 18.

issued by the United States Department of Labor ("DOL") Wage and Hour Division is instructive. In that Letter, the DOL opined that even investigators contracted by the Defense Security Service, an agency of the United States Department of Defense, to complete "background investigations of potential government employees being considered for U.S. Government Secret and Top Secret security clearances" did not qualify as administrative employees under the FLSA. 2005 WL 3308592, at *1. Like those employees, Plaintiffs here simply provide "ongoing, day-to-day investigative services,…the results of which are turned over to [superiors] who then make a decision as to whether to…deny [the claims]." Id at *5.

Still, the arguments and factual disputes as to the merits briefly described above are best left to the summary judgment stage or trial, and may be further detailed at that point in time. As such, Defendants' contentions are both wrong and premature.

### E.  Advertisements Are Separate and Distinct From Court-Regulated Notice

Court facilitated notice, regardless of previous and legitimate efforts made by counsel to find and inform class members of a lawsuit, is important and necessary to ensure that potential plaintiffs are able to protect their rights under the FLSA. Defendants contend that Plaintiffs have engaged in a sort of "self-help" method to "recruit" additional class members, and by doing so have somehow waived "their right to gain the additional benefit of the regulated process."[23] Such an argument, however, misunderstands the purpose of judicial notice in collective actions—to inform the affected individuals of their rights and afford them the opportunity to join the action. In particular, a court in this District has stressed, "[b]ecause each potential plaintiff must affirmatively opt in to the lawsuit, and because 'the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the

---

[23] Dkt. 24, p. 22.

written consent form,' *court-facilitated notice is crucial*." <u>Montoya</u>, 2008 WL 554114, at *4

(quoting <u>Lee</u>, 236 F.R.D. at 199) (emphasis added).

 A vivid example of a judge recognizing the significance of court-ordered notice, and

which is particularly analogous here, can be seen in the case <u>Ruggles v. WellPoint, Inc.</u>, 591

F.Supp.2d 150 (N.D.N.Y. 2008). In <u>Ruggles</u>, the court—noting that plaintiffs' counsel had a

qualified First Amendment right to "constitutionally protected commercial speech in its

advertisements to a putative class"—granted conditional certification and issued court-authorized

notice to potential opt-in plaintiffs *after* Plaintiffs' counsel had already sent out "advertisement

letters" and posted notices on their website regarding the litigation.

This Motion is not a frivolous fishing expedition by Plaintiffs; it is a reasonable effort to

vindicate SIU Investigators' FLSA rights and deter future unlawful practices by Defendants. For

that reason, the Court should approve and issue Plaintiffs' proposed notice.

## II.   JUDICIAL NOTICE SHOULD BE ISSUED IMMEDIATELY AND CONSISTENT WITH PLAINTIFFS' PROPOSED FORM AND PROCEDURES

### A.  <u>Judicial Notice</u>

Plaintiffs' carefully drafted proposed judicial notice and consent form accomplish

everything the law requires in terms of providing timely, accurate and informative information to

the putative class members. <u>See</u> <u>Hoffmann-La Roche</u>, 493 U.S. at 172.  Plaintiffs, however, do

not oppose the following suggested modifications to the judicial notice offered by Defendants:[24]

- First page of judicial notice (Dkt. 24-9 at 2) – Plaintiffs agree to changes;

- Second page of judicial notice (Dkt. 24-9 at 3) – Plaintiffs agree to changes at paragraphs 2 and 4 under Section III; and

---

[24] The changes not agreed to by Plaintiffs explicitly in this brief are opposed.  Regarding those opposed changes, Plaintiffs maintain that their suggested language is most appropriate, including the language of Plaintiffs' proposed consent form.

- Fourth page of judicial notice (Dkt. 24-9 at 5) – Plaintiffs agree to deletion of reference to defense counsel as well as the suggested deletions that follow on that page.

**B.  A Ninety-Day Notice Period is Appropriate**

Defendants make no effort to explain why Plaintiffs' proposed notice period of ninety days should be reduced to sixty days.  A ninety-day notice period is reasonable and justified given the remedial purposes of the FLSA and the varying delivery times for first class mail, let alone the issues associated with returned mail.  Indeed, notice periods of ninety days are far more common than the short period proposed by Defendants.  See Kelly v. Bluegreen, 256 F.R.D. 626, 632 (W.D. Wis. 2009) (finding that ninety day notice period "appears reasonable"); Whalen v. U.S., 85 Fed. Cl. 380, 389 (Fed. Cl. 2009) (authorizing ninety day notice period); Pereira v. Foot Locker, Inc., 2009 WL 2951028, at *12 (E.D. Pa. Sept. 11, 2009) (same); McCaffrey v. Mortgage Sources, Corp., 2009 WL 2778085, at *5 (D. Kan. Aug. 27, 2009) (same); Alonso v. Uncle Jack's Steakhouse, Inc., 2009 WL 2222966, at *5 (S.D.N.Y. July 24, 2009) (same); Davis v. Westgate Planet Hollywood Las Vegas, LLC, 2009 WL 102735, at *14 (D. Nev. Jan. 12, 2009) (same); Gayle v. U.S., 85 Fed. Cl. 72, 81 (Fed. Cl. 2008) (same); Hernandez v. Two Bros. Farm, LLC, 2008 WL 4613069, at *2 (S.D. Fla. Oct. 15, 2008) (same); Goudie v. Cable Communications, Inc., 2008 WL 4628394, at *10 (D. Or. Oct. 14, 2008).

**C.  Reminder Notices are Necessary to Ensure Putative Class Members are Making Informed Decisions about Joining this Case**

Plaintiffs agree that the purpose of the judicial notice process is to inform potential class members of their rights.  One reason why reminders are necessary is because often the first notice that is distributed is never seen by the potential class members.  As one law review article comments:

> …even if the court-approved notice arrives in the correct mail box, its message is
> unlikely to be received in the manner most judges and lawyers expect. Many
> people who find such a notice in their mail will throw it away.  It is an unsolicited
> piece of mail involving a legal proceeding. If recipients read the notice, they are
> likely to find the language confusing, intimidating, or threatening.

<u>See</u> 92 Minn. L. Rev. 1317, 1327 (May 2008).

Reminders are one way to try to ensure potential class members make an informed decision about joining a collective action and should be endorsed by this Court consistent with other courts around the country. <u>Harris v. Vector Mktg. Corp.</u>, 2010 WL 1998768 (N.D. Cal. May 18, 2010); <u>Oliver v. Aegis Commc'ns Group, Inc.</u>, 2008 WL 7483891, at *4 (N.D. Tex. Oct. 30, 2008).

### D.  **Posting the Judicial Notice Form is Appropriate**

As shown in Plaintiffs' initial brief, courts have repeatedly allowed postings in workplace locations.  While Plaintiffs work from their homes, they visit Defendants' offices to meet with supervisors or claims adjusters.  Simply put, for the reasons reminder notices are appropriate, posting the judicial notice form is appropriate as well.

### F.  **The Requested Identifier Information is to Ensure Putative Class Members Receive the Judicial Notice Form in a Timely Manner**

Finally, Defendants argue that providing certain identifier information of the similarly situated class members to Plaintiffs' counsel is inappropriate.[25]  This argument, however, has been routinely rejected. <u>See</u> <u>Bowens v. Atl. Maint. Corp.</u>, 2008 WL 1827439, at *25 (E.D.N.Y. Apr. 23, 2008) (finding that because issuance of notice was proper, disclosure of the identities of the similarly situated individuals to plaintiffs' counsel to facilitate notice was proper as well); <u>Stanfield v. First NLC Fin. Servs., LLC</u>, 2006 WL 3190527, at *5 (N.D. Cal. Nov. 1, 2006).

---

[25] Defendants do not want to produce dates of birth, dates of employment, telephone numbers or the last four digits of Social Security Numbers.

Moreover, this information is discoverable. Plaintiffs have requested some of it through written discovery and are therefore entitled to the information.  <u>Acevedo v. Ace Coffee Bar, Inc.</u>, 248 F.R.D. 550, 553 (N.D. Ill. 2008).

<u>**CONCLUSION**</u>

Plaintiffs have presented more than sufficient proof that they and putative class members are all similarly situated, as they are victims of a common policy and have similar wage and overtime claims, job duties, and pay. This showing is sufficient for certification because Defendants' SIU Investigators are uniformly affected by the misclassification everywhere exclusive of California.  The Court should apply the commonly-used lenient standard and grant Plaintiffs' Motion for Conditional Certification and Judicial Notice.

Respectfully Submitted:

Dated:  November 24, 2010

/s/_____

**NICHOLS KASTER, PLLP**

Paul J. Lukas, MN State Bar No. 22084X
(admitted *pro hac vice*)
Matthew H. Morgan, MN State Bar No. 304657
(admitted *pro hac vice*)
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Fax (612) 215-6870
lukas@nka.com
morgan@nka.com

/s/_____
(signed by Matthew H. Morgan with permission of
Sundeep Hora)

**ALDERMAN, DEVORSETZ & HORA PLLC**

Sundeep Hora, MD State Bar No. 28208
1025 Connecticut Avenue NW, Suite 615
Washington, DC 20036
Telephone (202) 969-8220
Facsimile (202) 969-8224
shora@adhlawfirm.com

ATTORNEYS FOR PLAINTIFFS