IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **SAMUEL CALDERON,** individually and on behalf of other similarly situated individuals, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Case No.: RWT 10cv1958 |
| **GEICO GENERAL INSURANCE COMPANY, et al.,** | * * * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiff Samuel Calderon, on behalf of himself and those similarly situated, has sued GEICO General Insurance Company and affiliated entities ("GEICO") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Calderon, a former Senior Security Investigator with GEICO, purports to sue on behalf of himself and current and former Senior Security Investigators, Lead Security Investigators, and Senior Investigators (collectively "Security Investigators") employed by GEICO. He asserts that GEICO Security Investigators were not paid overtime wages because they were improperly classified as "exempt" employees under FLSA. Calderon has moved for conditional collective action certification and court-approved notice pursuant to FLSA § 216(b). The motion has been fully briefed and a hearing was held on December 3, 2010. For the reasons stated below, Calderon's motion for conditional collective action certification will be granted and court-approved notice ordered.

## BACKGROUND

GEICO is a nationwide automobile insurance provider, headquartered in Chevy Chase, Maryland. In addition to its corporate headquarters, GEICO has eight regional offices in

Fredericksburg, Virginia; Woodbury, New York; Macon, Georgia; San Diego, California; Dallas, Texas; Lakeland, Florida; Virginia Beach, Virginia; and Buffalo, New York, and three service centers in Coralville, Iowa; Tucson, Arizona; and Honolulu, Hawaii.

GEICO employs 230 Security Investigators nationwide. Security Investigators are responsible for investigating insurance claims involving questionable, suspect, or fraudulent activities. Pls.' Mot. for Conditional Certification and Judicial Notice, ECF No. 23-1 at 4. Security Investigators interview witnesses, obtain statements, take photographs and write preliminary reports regarding their findings. *Id.* Preliminary reports are reviewed by each Security Investigator's supervisor, who grades them on a scale of one to five. *Id.* The supervisor then determines whether additional investigative steps, such as an examination of the claimant under oath, are necessary and returns the preliminary report to the Security Investigator. *Id.* at 4-5. Security Investigators send a final report to the assigned claims professional only after their reports are approved by their supervisors. *Id.* at 5.

Security Investigators must obtain approval from their supervisors to hire a private investigator to assist them in their investigations and are not permitted to decide whether to pay or deny an investigated claim. *Id.* at 4. According to Calderon, Security Investigators are not allowed to make recommendations or give opinions as to whether fraud occurred. *Id.* GEICO disputes this claim, arguing that Security Investigators are encouraged to express their opinions regarding whether fraud has occurred in their reports. Defs.' Opp'n to Pls.' Mot. for Collective Action Notice, ECF No. 24 at 6. Further, GEICO asserts that Security Investigators have the authority to determine whether to refer cases involving suspected fraud to law enforcement or regulatory agencies. *Id.* During the course of their investigations, Security Investigators may convince a claimant to withdraw his or her claim. *Id.* at 8-9.

The lead plaintiff, Samuel Calderon, was employed by GEICO as a Senior Security Investigator from March 17, 2008 until July 9, 2010. Compl. ¶ 4. Calderon filed this putative collective action on July 19, 2010, alleging that he and other Security Investigators were improperly categorized as "exempt" employees under FLSA, and therefore were not paid overtime wages even though they worked in excess of forty hours per work week. *Id.* ¶¶ 16, 24. The Complaint contains one count alleging that GEICO willfully violated the FLSA. *Id.* at 6-7. Calderon and ten opt-in plaintiffs (collectively "Plaintiffs") seek to recover unpaid overtime compensation, liquidated damages, costs and attorney's fees. *Id.* ¶¶ 27-28.

On October 22, 2010, Plaintiffs moved for conditional collective action certification. Pls.' Mot. for Conditional Class Cert., ECF No. 23-1 at 1-2. Plaintiffs define the proposed collective action class as "all persons who are or have been employed by GEICO as Security Investigators at any time within the United States (exclusive of California) within three years prior to this action's filing date, through the date of the disposition of this action," including "Senior Security Investigators, Lead Security Investigators, or [individuals with] some similar title." *Id.* ¶¶ 2, 10.

In order to facilitate notice to potential class members, Plaintiffs seek a court order directing GEICO "to provide their counsel with . . . an updated computer-readable data file containing the names, last known mailing addresses, telephone numbers, employment dates as a Security Investigator, dates of birth, and the last four digits of the Social Security numbers of all current and former employees of GEICO, exclusive of those working in California, who have worked as a 'Security Investigator' during the past three years." *Id.* at 2. Plaintiffs request a ninety-day notice period for potential class members to join the case. *Id.* at 15-16. They also seek an order authorizing Plaintiffs' counsel to send reminder notices with consent forms to

potential class members forty-five days, sixty days and seventy-five days after the initial notice is mailed; requiring GEICO to post notice of this lawsuit at its workplaces; and requiring GEICO to include notice of this lawsuit in each potential class members' first paycheck issued following entry of the order authorizing notice. *Id.* at 15-16.

GEICO opposes conditional collective action certification arguing that Security Investigators are not similarly situated because the job responsibilities of Security Investigators vary from one regional office to another and from one Security Investigator to another. Defs.' Opp'n to Pls.' Mot. for Collective Action Notice, ECF No. 24, at 14-15. GEICO also argues that the decision to grant collective action notice can be irreversible as a practical matter and therefore it should be granted only if it is clear that an expanded case would be manageable and that Plaintiffs are likely to succeed on the merits. *Id.* at 12-16, 18-21. GEICO contends that a collective action in this case would not be manageable because determining whether Security Investigators qualify for the administrative exemption to FLSA's overtime pay requirements is likely to require individualized scrutiny of their day-to-day responsibilities. *Id.* at 16-18. Finally, GEICO asserts that Plaintiffs have waived their right to court-authorized notice by issuing their own advertisements seeking potential plaintiffs. Defs.' Opp'n at 1-2. ECF No. 24.

Even if the Court grants conditional certification, GEICO argues that the scope of notice proposed by Plaintiffs is overbroad. First, GEICO argues that it should not be compelled to produce certain personal information about its employees—such as their telephone numbers and social security numbers—to facilitate Plaintiffs' notice to potential members of the potential class. *Id.* at 23-24. GEICO also argues that Plaintiffs' proposed 90 day notice period is longer than necessary and asserts that granting Plaintiffs' request to send multiple reminder notices to potential class members will only stir up litigation. *Id.* at 22-23. Finally, GEICO objects to

Plaintiffs' request that GEICO be ordered to post notice of the lawsuit in GEICO workplaces and to include notice of this action in Security Investigators' next paychecks. *Id.* at 23.

## **ANALYSIS**

Under 29 U.S.C. § 216(b), employees may maintain a "collective action" against their employer for violations of the FLSA if the employees are "similarly situated."

Section 216(b) of the FLSA provides, in pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

This section "established an opt-in scheme whereby potential plaintiffs must notify the court of their intention to be a party." *Robinson v. Empire Equity Group, Inc.*, 2009 WL 4018560, at *1 (D. Md. Nov. 18, 2009) (internal citations omitted). "Courts have discretion to allow collective actions and to facilitate notice to potential plaintiffs by ordering the employer to produce names and addresses of employees who may have been subjected to the allegedly unlawful practice." *Id.*

This Court has adopted a two-step approach to determine whether collective treatment is warranted. *Id.* at *2. At the first stage, conditional certification, Plaintiffs must make a "preliminary factual showing, usually by pleadings and affidavits, that a similarly situated group

5

of potential plaintiffs exists." *Id.* "Because the court has minimal evidence [at this stage], this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." *Yeibyo v. E-Park of DC, Inc.,* 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008).

At the conditional certification stage, "the court does not make a conclusive determination that a class of similarly situated plaintiffs exists; it merely determines whether the plaintiffs have made a 'modest factual showing' of similar situation that justifies notifying potential plaintiffs of the suit." *Robinson*, 2009 WL 4018560, at *2. "Factual disputes do not negate the appropriateness of court facilitated notice," but "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Camper v. Home Quality Mgmt, Inc.*, 200 F.R.D. 516, 519-20 (D. Md. 2000).

"Plaintiffs are similarly situated when they raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from similar job requirements and pay provisions." *Robinson*, 2009 WL 4018560, at *2 (internal quotations omitted). "[C]lass members' positions need not be identical, only similar." *Id.* However, conditional certification is inappropriate if it is apparent that the job responsibilities of potential class members differ in significant ways. *See Andrade v. Aerotek, Inc.*, 2009 WL 2757099, at *3 (D. Md. Aug. 26, 2009). "After discovery is complete and more factual information is available to the court, the defendant may file a motion to decertify the class" at which point "the court uses a higher standard to determine whether the members of the class are similarly situated." *Robinson*, 2009 WL 4018560, at *2 (internal quotations omitted).

In determining whether GEICO Security Investigators are similarly situated for the purpose of conditional certification, the analyses of this Court in two recent cases—*Andrade v.*

6

*Aerotek, Inc.* and *Robinson v. Empire Equity Group, Inc.*—are instructive. *Andrade* involved claims by a putative FLSA class of recruiter trainees, recruiters and accounting recruiting managers (ARMs) against their former employer, an international staffing agency. The Court denied plaintiffs' motion for conditional certification with respect to a class of recruiters and ARMs because it found that there were marked differences in the job responsibilities of individual recruiters, and in the responsibilities of recruiters as compared to ARMs. *Andrade*, 2009 WL 2757099, at \*\*3-4. The recruiters' degree of hiring and firing authority varied from one division of the company to another, as did their degree of authority to negotiate wages and benefits for individuals they hired. *Id.* at \*3. The type and number of recruits hired by different recruiters also varied by division. *Id.* The responsibilities of ARMs differed in important ways from those of recruiters and the responsibilities of ARMs also differed from one ARM to the next. Some ARMs made hires without their client being involved, while other ARMs made no such hires. *Id.* at \*3 & n.8. Some ARMs notified terminated employees of their termination, while others did not. *Id.* n.8. Unlike recruiters, ARMs were responsible for client account management and sales functions, in addition to recruiting. *Id.* at \*2. The Court held that conditional certification of a group of ARMs and recruiters was inappropriate given their widely divergent job responsibilities and levels of authority to perform certain hiring and termination functions. *Id.* at \*4.

However, the *Andrade* Court did conditionally certify a group of recruiter trainees, holding that they were similarly situated. The Court found that all recruiter trainees followed the same 90-day training program during which they completed computer training modules, shadowed recruiters, and became acclimated to the nature and pace of recruiting in their divisions. *Id.* at \*4. All recruiter trainers were evaluated at the 45-day mark and at the end of

their 90-day training program. *Id.* Further, during the training period, recruiter trainees were all allegedly subject to the same "policy of encouraging overtime work while forbidding the reporting of overtime hours." *Id.* at *4. The reason recruiter trainees were similarly situated, the Court held, was because they both had similar job responsibilities *and* were subject to the same policy that allegedly violated the FLSA. *Id.* at **4-5.

In *Robinson v. Empire Equity Group, Inc.*, this Court conditionally certified a group of loan officers as a FLSA class, finding that they were "similarly situated even though there [were] distinctions in their job titles, functions, [and] pay." *Robinson v. Empire Equity Group, Inc.*, 2009 WL 4018560, at *3 (D. Md. Nov. 18, 2009). The Court held that the loan officers' "*essential duties* appear to be the same." *Id.* at *4 (emphasis added).

> Loan officers' essential duties include advising borrowers about lenders and loans, matching borrowers with lenders, and negotiating loans. This work requires collecting and analyzing customer financial information, evaluating and recommending loan products, and marketing 1st Metro's services through networking and in-person solicitation. Although these tasks may be performed differently, the Plaintiffs have made a sufficient preliminary showing that the potential class members have similar duties."

*Id.*

Similarly, Plaintiffs in this action have "made a sufficient preliminary showing that the potential class members have similar duties." *Robinson*, 2009 WL 4018560, at *4. Plaintiffs have submitted sworn declarations from former Senior Security Investigators Samuel Calderon, Michael Headley, George Wood and Robert DeMartino; current Senior Security Investigators Thomas Brady, James Hanson, Aaron Kulsic, Kenneth Miller and Michael Creamer; former Security Investigator John Halliday; and current Security Investigator Dana Ferrin. Pls.' Mot. for Conditional Certification, ECF No. 23, Ex. 3 (Pls.' Declarations). All eleven plaintiffs allege that while employed by GEICO they routinely worked over forty hours per week to investigate all files assigned to them and that they performed the same, primary job duty—investigating

questionable, suspect or fraudulent claims. Pls.' Mot. Ex. 3. (All Decls. at ¶ 6). All Plaintiffs allege that they were responsible for interviewing witnesses, obtaining statements, and taking photographs of purported accidents. *Id.* (All Decls. at ¶ 8). They all allege that they were required to obtain approval from the claims professional to whom the claim was assigned if they wished to use a private investigator to assist in an investigation. *Id.* All plaintiffs allege they were required to submit regular reports to their supervisors, who decided if additional investigation was necessary. *Id.* (All Decls. at ¶ 9). All Plaintiffs claim that they were required to simply report facts, but did not have the authority to deny a claim or determine whether an examination of the claimant under oath was warranted. *Id.* Finally, all allege that other Security Investigators in their region routinely worked over 40 hours per week and that Defendant has a company-wide policy, exclusive of California, of not paying Security Investigators overtime compensation because they are classified as "exempt" employees under FLSA. *Id.* (All Decls. at ¶¶ 12-13). Given the "lenient standard" employed in this District when determining if conditional collective action certification is appropriate, *see Yeibyo v. E-Park of DC, Inc., et al*, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008), Plaintiffs' sworn declarations sufficiently allege that they perform similar job functions and are subject to a company-wide policy, exclusive of California, of not paying Security Investigators overtime despite the fact that they consistently work more than 40 hours per week.

In opposing conditional certification, GEICO points to minor differences in the potential collective action members' job responsibilities and argues that these differences should compel the Court to deny conditional certification. GEICO points out that Plaintiff Calderon and six of the ten opt-in Plaintiffs worked in GEICO's Florida regional office, where "59 percent of the [Security Investigators'] case load involves suspected fraudulent claims made under personal

injury protection policies" whereas "[i]n most other regions, state laws do not provide such coverage" and personal injury protection policy claims are therefore less common. Defs.' Opp'n at 10. ECF No. 24. GEICO also argues that different weight is given to various criteria by which Security Investigators are evaluated in different regional offices. *Id.* at 11. GEICO points to other variations between regional offices, for example, that most examinations under oath of claimants or other witnesses occur in the Lakeland, Buffalo, and Woodbury regions. *Id.* Finally, GEICO notes that Plaintiff Calderon speaks Spanish and devoted extra time to translating for other investigators who were interviewing Spanish-speaking claimants and witnesses, a task in which other investigators did not engage. *Id.* at 7.

The minor variations in the job responsibilities of Security Investigators at GEICO's different, regional offices do not undermine the Court's conclusion that Plaintiffs have made a "modest factual showing" that Plaintiffs are "similarly situated." *Robinson*, 2009 WL 4018560, at * 2. GEICO does not refute Plaintiffs' declarations that each Security Investigator engaged in the same, primary job tasks—investigating suspected, fraudulent claims by interviewing witnesses, taking pictures and writing reports to their supervisors regarding their findings.

Unlike the recruiters and accounting recruiting managers denied conditional certification in *Andrade*, GEICO Security Investigators do not have divergent levels of authority to complete certain job tasks. For example, GEICO does not allege that some Security Investigators have the authority to deny claims without the approval of a supervisor, while others do not. One of the reasons this Court determined that recruiters and accounting recruiting managers in *Andrade* were not similarly situated was because some had the authority to hire employees without consulting their clients, negotiate wages and benefits, and notify employees of their termination, while others did not.

The differences GEICO points to deal more with how much time an individual Security Investigator may spend addressing certain *types* of fraudulent claims—they do not undermine the overarching similarities in the job responsibilities for which Security Investigators are responsible. As stated in *Yeibyo*, potential collective action plaintiffs need only be similarly situated "with respect to their job requirements and with regard to their pay provisions; the positions need not be identical." *Yeibyo*, 2008 WL 182502, at *7. Security Investigators' "essential duties" appear to be substantially the same, and they have, as a group, been subject to the same, alleged FLSA misclassification. Therefore conditional collective action certification is appropriate. *Robinson*, 2009 WL 4018560, at *4.

GEICO's argument that "the decision to grant collective action notice can be irreversible as a practical matter and therefore should be granted only if it is clear that an expanded case would be manageable" misses the thrust of this Court's case law. *See* Defs.' Opp'n to Pls.' Mot. for Conditional Class Cert., ECF No. 24, at 12-16, 18-21. This Court has held that conditional certification should be granted where plaintiffs have made a "modest factual showing" that there is a group of "similarly situated" collective action plaintiffs. *Robinson*, 2009 WL 4018560, at *2. Though GEICO argues that "decertifying a collective action is like trying to put toothpaste back in a tube," this Court's case law reflects the view that a "lenient standard" should be applied at the conditional certification stage because few facts have been developed regarding the relative job responsibilities of the potential collective action plaintiffs. Defs.' Opp'n at 13, *Yeibyo v. E-Park of DC, Inc., et al*, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008).

GEICO also speculates that "factual variations . . . could make a collective action, especially a nationwide one, unworkable." Defs.' Opp'n at 16. As discussed above, the factual distinctions between Security Investigators that GEICO has highlighted are minor. Plaintiffs

need not be identical, they must just be similar, to be conditionally certified as a FLSA class. *Yeibyo*, 2008 WL 182502, at *7. Further, if discovery reveals that there are substantial factual variations in the job responsibilities of Security Investigators, GEICO may file a motion to decertify the class. At this point, GEICO's argument that this collective action will be unmanageable is purely speculative.[1]

Having concluded that conditional certification is appropriate, the Court now turns to the parties' disputes regarding the scope of court-authorized notice. In *Hoffman-La Roche v. Sperling*, the Supreme Court held that court-approved notice to potential plaintiffs in FLSA collective actions is proper in "appropriate cases" and determining what is an appropriate case is within the discretion of the district court. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). This Court has elaborated that "[c]ourt authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Montoya v. S.C.C.P. Painting Contractors, Inc., et al.*, 2008 WL 554114, at *4 (D. Md. Feb. 26, 2008). "Because the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written [opt-in] consent form, court-facilitated notice is crucial." *Id.* "The court must take pains, however, to avoid the stirring up of litigation through unwarranted solicitation and to recognize that an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *Id.*

---

[1] GEICO also argues that the Court should deny conditional collective action certification because Plaintiffs are not likely to succeed on the merits. *See* Defs.' Opp'n at 18-21. An argument on the merits is premature. *See, e.g. Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). Courts "should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Id.* The inquiry at this stage is only whether Plaintiffs have made a "'modest factual showing' of similar situation that justifies notifying potential plaintiffs of the suit." *Robinson*, 2009 WL 4018560, at *2.

GEICO argues that Plaintiffs have waived their right to court-authorized notice because Plaintiffs' counsel solicited potential plaintiffs to bring this action. Defs.' Opp'n at 21-22. This argument is not supported by case law in this Court or any other. The District Court for the Northern District of New York, when confronted with the same argument, held that Plaintiffs' counsel's use of advertisements to solicit potential collective action plaintiffs is constitutionally protected commercial speech that does not necessarily negate the need for court-authorized notice. *See* Pls.' Reply at 10 (*citing Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150 (N.D.N.Y. 2008)). This Court agrees. The importance of timely informing potential opt-in plaintiffs of their rights is not undermined by the actions of Plaintiffs' counsel in advertising for lead plaintiffs to bring this action.

The parties also dispute the appropriate geographic scope of the proposed notice. GEICO argues that providing notice to GEICO Security Investigators employed nationwide is inappropriate, citing to this Court's *Andrade* and *Camper* decisions in support. In those cases, this Court limited court-authorized notice to employees working at one or two of a defendants' business locations. *See Andrade*, 2009 WL 2757099, at *5; *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516 (D. Md. 2000). However, in *Andrade* and *Camper*, plaintiffs had produced evidence of potential FLSA violations only with respect to those, discrete locations. *See, e.g., Andrade*, 2009 WL 2757099, at *5 ("All of the plaintiffs who have offered testimony indicating the existence of this under-reporting policy were former employees of [defendant's] Charlotte office.") Here, declarations were submitted from current and former employees who reported to five of GEICO's eight regional offices. *See* Pls.' Mot. for Conditional Certification, Ex. 3. GEICO's alleged misclassification of Security Investigators appears to be nationwide, and therefore nationwide court-approved notice is appropriate.

GEICO also takes issue with Plaintiffs' request to send reminder notices after sending the court approved notice; their request for an order compelling GEICO to post notice of the lawsuit in its workplaces and to send notice in employee paychecks; and their request that GEICO produce employees' phone numbers, dates of employment, dates of birth and the last four digits of employees' Social Security numbers. Defs.' Opp'n, ECF No. 24, at 22-23.

The Court will not permit Plaintiffs' counsel to send reminder notices to potential class members. Plaintiffs' request to send reminder notices has the potential to unnecessarily "stir up litigation," and will therefore be denied. *Montoya v. S.C.C.P. Painting Contractors, Inc.*, *et al.*, 2008 WL 554114, at *4 (D. Md. Feb. 26, 2008). A single notice in the form attached to this Court's order is more than sufficient to provide notice to the potential opt-in plaintiffs who may choose to participate. Plaintiffs' request for an order compelling GEICO to post notice at GEICO's offices and distribute notice by paycheck will also be denied. Most GEICO Security Investigators work remotely, and requiring GEICO to post notices at its regional offices would therefore be unnecessarily intrusive while concomitantly serving little purpose. GEICO cites certain practical problems with sending notice by paycheck, given that paychecks are not sent in envelopes but rather in a form where employees merely rip the sides off of the sealed paycheck to open it. At this point, the Court sees no reason to impose upon GEICO the costs associated with providing what would be largely duplicative notice to potential opt-in plaintiffs.

GEICO shall be ordered to provide Plaintiffs with the names, last known mailing addresses, and dates of employment of members of the conditionally certified class, but GEICO shall not be required to produce sensitive personal information concerning employees' social security numbers, phone numbers or dates of birth. Plaintiffs' request for the names, addresses and dates of employment of all Security Investigators employed by GEICO for the past three

14

years is reasonably necessary to facilitate "timely, accurate, and informative" notice to potential plaintiffs. *Hoffman-La Roche*, 493 U.S. at 172. However, this Court has recently held that absent a showing by plaintiffs of "special need for disclosure of class members' telephone numbers," ordering such disclosure is not appropriate. *See Arevalo v. D.J.'s Underground*, 2010 WL 4026112, at *2 (D. Md. Oct. 13, 2010). Plaintiffs have not shown any special need for disclosure of GEICO employees' telephone numbers, and therefore GEICO shall not be ordered to produce this information at this time. Further, given the privacy interests of GEICO employees, this Court will not order GEICO to produce any information regarding the Social Security numbers or dates of birth of potential opt-in plaintiffs. *See Jackson v. Papa John's USA*, 2009 WL 1011105 (N.D. Ohio 2009) (denying request for Social Security numbers); *Alonso v Uncle Jack's Steakhouse*, 648 F. Supp. 2d 484 (S.D.N.Y. 2009) (same); *but see Bowens v. Atlantic Maint. Corp.*, 546 F. Supp. 2d 55 (E.D.N.Y. 2008) (requiring defendant to disclose social security numbers of potential collective action plaintiffs). The remaining disputes concerning the form of the proposed notice are minor, and have been resolved to conform Plaintiffs' proposed notice to notice issued by this Court in similar cases.

## CONCLUSION

Because Plaintiffs have made the requisite factual showing that members of the putative collective action are similarly situated, Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice shall be granted by separate order.

<u>January 12, 2011</u>　　　　　　　　　　<u>         /s/         </u>
Date　　　　　　　　　　　　　　　　Roger W. Titus
　　　　　　　　　　　　　　　　　　United States District Judge