**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Samuel Calderon, et al., | ) | Civil Action No.: 8:10-cv-01958 RWT |
| individually and on behalf of other | ) | |
| similarly situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEICO General Insurance Company, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ................................................................................................................1

UNDISPUTED FACTS ........................................................................................................3

DISPUTED FACTS.............................................................................................................5

ARGUMENT ......................................................................................................................9

I.      DEFENDANT BEARS A HEAVY BURDEN AT SUMMARY JUDGMENT..............9

II.     THE FLSA IS A REMEDIAL STATUTE INTENDED TO PROTECT
        ALL EMPLOYEES, INCLUDING INVESTIGATORS .................................................9

III.    PLAINTIFFS' PRIMARY JOB DUTY OF INVESTIGATING IS NOT RELATED
        TO DEFENDANT'S MANAGEMENT POLICIES OR GENERAL BUSINESS
        OPERATIONS.................................................................................................................11

        A.  Defendant Omits Important Regulations From Its Description of the Legal
            Framework ...........................................................................................................11

        B.  Plaintiffs' Investigatory Activities Are Not Directly Related to Management or
            Defendant's General Business Operations............................................................12

        C.  Defendant's Attempt to Distinguish Relevant Authorities on Public/Private
            Grounds Should be Rejected..................................................................................14

        D.  Defendant's Authority is Unpersuasive and Distinguishable ..................................15

IV.     INVESTIGATORS DO NOT EXERCISE DISCRETION AND INDEPENDENT
        JUDGMENT WITH RESPECT TO MATTERS OF SIGNIFICANCE ........................17

        A.  Defendant Incorrectly Describes the Regulation ....................................................17

        B.  Claims Adjuster Cases Relied Upon By Defendant are Inapposite.........................19

        C.  Plaintiffs Do Not Resolve Matters of Significance .................................................20

        D.  Investigators' Limited Discretion Does Not Relate to Matters of Significance .......21

CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

Adams v. United States, 78 Fed. Cl. 536 (Fed. Cl. 2007) ........................................................12

Ahle v. Veracity Research Co., 738 F. Supp. 2d 896 (D. Minn. 2010) ................... 16-17, 20-22

Arnold v. Ben Kanowsky, Inc., 361 U.S. 388 (1960)..................................................................9

Auer v. Robbins, 519 U.S. 452 (1997) ..................................................................................1, 9

Bothell v. Phase Metrics, Inc., 299 F.3d 1120 (9th Cir. 2002)..................................................13

Cheatham v. Allstate Ins. Co., 465 F.3d 578 (5th Cir. 2006) ..............................................15, 19

Clark v. J.M. Benson Co., Inc., 789 F.2d 282 (4th Cir. 1986)..............................................1, 9

Conway v. Takoma Park Volunteer Fire Dep't, Inc., 666 F. Supp. 786 (D. Md. 1987).............10

Counts v. South Carolina Elec. and Gas Co., 317 F.3d 453 (4th Cir. 2003) .............................18

Desmond v. PNGI Charles Town Gaming, L.L.C.,
  564 F.3d 688 (4th Cir. 2009) ..............................................................................................1, 9

Donovan v. Brown Equip. & Serv. Tools, Inc., 666 F.2d 148 (5th Cir. 1982).........................10

In re Farmers Ins. Exch., Claims Reps.' Overtime Pay Litig.,
  481 F.3d 1119 (9th Cir. 2007) ..........................................................................................15, 19

Fenton v. Farmers Ins. Exch., 663 F. Supp. 2d 718 (D. Minn. 2009)........................................22

Foster v. Nationwide, 695 F. Supp. 2d 748 (S.D. Ohio 2010)...................................................16

Gusdonovich v. Bus. Info., 705 F. Supp. 262 (W.D. Pa. 1985)............................... 12, 14, 16-17

Harris v. Superior Court,
  144 Cal. Rptr. 3d 289, 2012 WL 2990020 (Ct. App. July 23, 2012)......................................12

Jastremski v. Safeco Ins. Co., 243 F. Supp. 2d 743 (N.D. Ohio 2003) .....................................20

Jewell Ridge Coal Corp. v. Local 6167, United Mine Workers, 325 U.S. 161 (1945) ..............10

Lee v. Vance Executive Prot., Inc., 7 F. App'x 160 (4th Cir. 2001) .........................................10

Martin v. Ind. Mich. Power Co., 381 F.3d 574 (6th Cir. 2004)............................................13, 17

Marting v. Crawford & Co., 2006 WL 681060 (N.D. Ill. Mar. 14, 2006)............................15, 19

McAllister v. Transamerica Occidental Life Ins. Co., 325 F.3d 997 (8th Cir. 2003)................19

Mullins v. Target Corp., 2011 WL 1399262 (N.D. Ill. Apr. 13, 2011) ......................................16

Overnight Motor Co. v. Missel, 316 U.S. 572 (1942) ................................................................10

Robinson-Smith v. GEICO, 590 F.3d 886 (D.C. Cir. 2010)........................................... 15, 18-19

Roe-Midgett v. CC Servs., Inc., 512 F.3d 865 (7th Cir. 2008)..............................................15, 19

Roney v. United States, 790 F. Supp. 23 (D.D.C. 1992) ............................................................18

Schaefer v. Ind. Mich. Power Co., 358 F.3d 402 (6th Cir. 2004)........................................13, 17

Standard Sec. Life Ins. Co. of N.Y. v. West, 267 F.3d 821 (8th Cir. 2001)..............................12

Stout v. Smolar, 2007 WL 2765519 (N.D. Ga. Sept. 18, 2007) .................................................16

Walling v. Helmerich & Payne, 323 U.S. 37 (1944) ..................................................................10

Withrow v. Sedgwick Claims Mgmt. Serv., Inc.,
  2012 WL 242773 (S.D. W. Va. Jan. 25, 2012).......................................................................19

Zuber v. APC Natchiz, Inc., 144 F. App's 657 (9th Cir. 2005)..................................................15

## REGULATIONS AND RULES

29 C.F.R. § 541.3 ........................................................................................................................14

29 C.F.R. § 541.200......................................................................................................................1, 17

29 C.F.R. § 541.201 ................................................................................................................. 11-12

29 C.F.R. § 541.202 ................................................................................................................. 20-22

29 C.F.R. § 541.203 ................................................................................................................15, 22

29 C.F.R. § 541.205 ....................................................................................................................14

29 C.F.R. § 541.700 ................................................................................................................. 18-19

**OTHER AUTHORITIES**

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside
Sales and Computer Employees, 69 Fed. Reg. 22,122
(Apr. 23, 2004)........................................................................................................................15

Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA 2005-21
  2005 WL 3308592 (Aug. 19, 2005)........................................................................... 14, 20-21

Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA 2006-30
  2006 WL 2792444 (Sept. 8, 2006)..........................................................................................16

H.R. Rep. No. 75-1452 (1937)..................................................................................................10

S. Rep. No. 75-884 (1937)........................................................................................................10

## <u>INTRODUCTION</u>

The Fourth Circuit's summary judgment standard in a FLSA exemption case is a difficult one for the employer to meet: the employer must prove by clear and convincing evidence that its employee's primary job duties plainly and unmistakably satisfy each element of the claimed exemption.  <u>See</u> <u>Desmond v. PNGI Charles Town Gaming, L.L.C.</u>, 564 F.3d 688, 692 (4th Cir. 2009) (adopting "clear and convincing" standard); <u>Clark v. J.M. Benson Co., Inc.</u>, 789 F.2d 282, 286 (4th Cir. 1986) (same); <u>Auer v. Robbins</u>, 519 U.S. 452, 462 (1997) (explaining that FLSA exemptions should be narrowly construed against employers and only applied to employees whose "job duties plainly and unmistakably" fall within the exemption).

Here, Defendant alleges that Plaintiffs, its Security Investigators ("Investigators"), are covered by the administrative exemption.  The exemption has three elements.  First, the employer must pay the employee "on a salary or fee basis at a rate of not less than $455 per week."  29 C.F.R. § 541.200(a).  Second, the employee's "primary job duty" must be "the performance of office or non-manual work directly related to [Defendant's] management or general business operations."  <u>Id.</u>  Third, the employee's "primary duty" must "include[] the exercise of discretion and independent judgment with respect to matters of significance."  <u>Id.</u> The parties' dispute centers on whether Defendant has met its burden of proving the second and third elements.  In other words, Defendant must show by clear and convincing evidence that Plaintiffs plainly and unmistakably meet both of the disputed elements.  If the Court finds that Defendant has not satisfied its burden with respect to any aspect of either element, it must find that Plaintiffs are non-exempt employees entitled to overtime pay and grant summary judgment in their favor.

Because Defendant cannot carry its heavy burden with respect to either element, its motion should be denied and summary judgment should be granted in favor of Plaintiffs.  With respect to the first element, the undisputed evidence in this case confirms that Plaintiffs' primary job duty as Investigators is to conduct investigations.  The weight of authority holds that employees with such a primary duty are not administratively exempt and are entitled to overtime pay because investigating is not directly related to the employer's management or general business operations.  In addition, Plaintiffs' work as Investigators is production work and does not plainly and unmistakably fall into any of the categories of back-office work considered to be administrative by the Department of Labor.

As to the second element, Defendant fails to carry its burden because Plaintiffs' primary job duty, conducting investigations, does not involve the exercise of discretion and independent judgment with respect to matters of significance.  As many courts have recognized, most employees have a primary job duty that includes the exercise of some discretion and independent judgment.  But that is not the test.  Rather, the administrative exemption requires such discretion and independent judgment to be "with respect to matters of significance" as the Department of Labor and the courts around the country have defined and interpreted that term of art.  Ignoring this important concept, Defendant instead focuses on the various decisions Plaintiffs make in the course of an investigation (*e.g.*, what questions are asked during interviews, what investigation methods are used, etc.) even though such activities have been repeatedly determined to be non-exempt work.  Defendant also ignores the undisputed evidence that it trains its Investigators to be fact finders and instructs them not to provide their opinions on whether a claim should be paid or not.  Indeed, one of the overarching themes of Defendant's brief is that Plaintiffs are exempt because they are similar to claims adjusters, a position that most courts and the Department of

Labor have found to be exempt.  While this has been a common argument lodged by employers like Defendant in recent investigator cases, this Court must reject it because most claims adjusters have very different primary job duties than Plaintiffs.  And because the test under the administrative exemption is about the employee's primary job duty, the claims adjuster cases are largely irrelevant to the analysis this Court must undertake.

In light of Defendant's heavy burden, the evidence before the Court regarding Plaintiffs' primary job duties, and the guidance from the courts and Department of Labor, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for summary judgment and deny Defendant's motion.

## UNDISPUTED FACTS[1]

The regulations governing the application of the administrative exemption focus on the employee's primary job duty.  Plaintiffs[2] maintain that their primary job duty as Investigators is to conduct investigations.  (Pls.' Mem. at 7.)  This fact is confirmed by the testimony of Defendant's own management employees:

- Steven Rutzebeck, Defendant's Rule 30(b)(6) corporate designee and Director of Claims Security and Special Investigations, testified that Investigators spend approximately 90% of their working hours on their primary job duty of conducting investigations.  (Pls.' Ex. 33, Rutzebeck 30(b)(6) Dep. at 47:18-24 (ECF No. 80-35).)

- Michael College, Defendant's former Operations and Training Manager for Special

---

[1] As this brief constitutes both an opposition to Defendant's motion for summary judgment and a reply in support of Plaintiffs' motion for summary judgment, Plaintiffs incorporate by reference all facts stated in Plaintiffs' moving papers (See ECF No. 80).

[2] As in Plaintiffs' opening brief (ECF No. 80-1), the terms "Plaintiffs" and "Investigators" refer to the named Plaintiffs, opt-in Plaintiffs, and Rule 23 Class Members.  Likewise, references to "Defendant" refer to the two remaining Defendants, GEICO General Insurance Company and Government Employees Insurance Company.

Investigations, who testified that the main job function of Investigators is to conduct

investigations.  (Pls.' Ex. 27, College Dep. 33:3-5 (ECF No. 80-29).)

- Gary Hodge, one of Defendant's current SIU Supervisors, who testified that the

   Investigators' main job duty is to gather and report factual information surrounding an

   insurance claim for Defendant's claims adjusters.  (Pls.' Ex. 30, Hodge Dep. 51:9-12

   (ECF No. 80-32).)

Plaintiffs' testimony is consistent.  (Pls.' Ex. 26, Calderon Dep. 53:20-54:7 (ECF No. 80-28);

Pls.' Ex. 29, Fitzgerald Dep. 44:23-45-22 (ECF No. 80-31); Pls.' Exs. 19-25 at ¶ 4 (ECF Nos.

80-21-27).)  Additionally, Defendant's corporate witnesses confirm that the reports of

Investigators' investigations should contain a "synopsis of all pertinent investigative findings"

and any recommendations given must "be based upon the facts of the investigation" and must

"not include statements regarding payment of claims unless required by state law." (Pls.' Ex. 31,

Marine Dep. 80:19-81:16 (ECF No. 80-33).) Defendant's commitment to limiting Investigators'

ability to provide opinions is confirmed in materials written by Defendant's managers and issued

to the Investigators.  According to Defendant's SIU Administration and Operations Manual ("A

& O Manual") (Pls.' Ex. 4 (ECF No. 80-6)), Investigators' reports should be "non-accusatory in

nature, and contain a summary of investigative facts which reference evidence gathered during

the investigation."  (Id. at GEICO.000483.)  Additionally, "[r]eports will be free of innuendoes,

opinions or rumors. Reports will be based upon objective findings, observations, and physical

evidence or other pertinent documentation."  (Id. at GEICO.000484.)  Defendant also trains its

Investigators to exclude opinions from their reports. (Pls.' Ex. 27, College Dep. 23:10-19 (ECF

No. 80-29); Pls.' Ex. 31, Marine Dep. 47:22-24 (ECF No. 80-33) (Investigators' reports should

be free of subjectivity).)  Its training materials, which are communicated to all "SIU associates"

and are posted on Defendant's intranet, state that reports should contain facts, and not opinions.
(Pls.' Ex. 5 (ECF No. 80-7).)

Importantly, Defendant does not dispute that Plaintiffs' primary job duty as Investigators
is to conduct investigations.  Instead, Defendant dances around the issue, spending twenty-seven
pages on the minutiae of Plaintiffs' work, mischaracterizing it where possible, to apparently
prove the unremarkable fact that Investigators make decisions in the course of conducting
investigations.  Similarly, Defendant does not deny the testimony of its management employees
or the content of its own documents.

### DISPUTED FACTS

**Defendant's Statement of Fact:**  "GEICO is in the business of selling insurance policies
to customers." (Def.'s Mem. at 1.)

**Plaintiffs' Response:**  Defendant's business is more than selling policies.  According to
Nancy Pierce, Defendant's Vice-President of Claims, Defendant's purpose is to sell insurance
policies and to handle claims for insurance coverage made by its policyholders.  (Pls.' Ex. 32,
Pierce Dep. 65:15-18 (ECF No. 80-34).)

**Defendant's Statement of Fact:**  "An SIU investigator investigates suspicious claims,
reports his findings to the adjuster and makes law enforcement and underwriting referrals if
warranted. In some investigations, investigators obtain withdrawals from claimants."  (Def.'s
Mem. at 2.)

**Plaintiffs' Response:**  Plaintiffs do not dispute that Investigators may make law
enforcement and underwriting referrals and may obtain withdrawals from claimants.  Plaintiffs
dispute their relevance, however, because they are activities performed as a consequence of their
primary job duty, which is to investigate.  And even if such activities were considered part of

their primary job duty, they do not establish discretion and independent judgment with respect to matters of significance.

**Defendant's Statement of Fact:**  "Plaintiffs [do not] occupy the lowest rung within the SIU Department.  There are lower rated non-exempt positions, such as clerical workers, in the department."  (Def.'s Mem. at 2, citing Affidavit of Steven F. Rutzebeck, ¶ 5.)

**Plaintiffs' Response:**  During questioning of Steven F. Rutzebeck, Defendant's Rule 30(b)(6) corporate designee regarding the hierarchy of Defendant's Special Investigations Unit, Mr. Rutzebeck answered "Yes" when asked "So at the lowest level is the Investigator, right?" (Pls.' Ex. 33, Rutzebeck 30(b)(6) Dep. 19:7-10 (ECF No. 80-35).)  Moreover, Defendant's use of the phrase "such as" improperly suggests that there are more than clerical workers below Investigators.  In any event, even if Investigators did not occupy the lowest level of the SIU hierarchy, it is undisputed that they were near the bottom, and were most certainly not considered management-level employees.  (Id. 19:7-15 (Investigators are "at the lowest level" of SIU and report to SIU supervisors, who report to SIU managers); Pls.' Ex. 31, Marine Dep. 7:6-20 (ECF No. 80-33) (the "first line of management relative to the investigator" are SIU supervisors).)

**Defendant's Statement of Fact:**  "Plaintiffs' contention that the "investigators' discretion and independent judgment is so limited, in fact, that Defendant does not even allow them to reject a referral that they believe was mistakenly flagged" is unsupported by the record. ECF No. 80-1 at 8. The testimony cited for that proposition was that if an investigator wished to reject a referral, he would usually give the reason to his supervisor. PX 31 Marine 18."  (Def.'s Mem. at 3.)

**Plaintiffs' Response:**  Although Defendant correctly notes that Donald Marine, Defendant's former Supervisor of Operations and Training for SIU, testified that Investigators may only reject referrals if they provide a reason for the rejection to their supervisor, Defendant neglected to point out that the rejection required the supervisor's approval, and, if the supervisor disagreed, the Investigator was forced to investigate.  (Pls.' Ex. 31, Marine Dep. At 17:25-18:17 (ECF No. 80-33).)  In other words, Plaintiffs' contention is fully supported by the record.

**Defendant's Statement of Fact:**  "The supervisors review the closing reports for investigators not on self-approval."  (Def.'s Mem. at 16.)

**Plaintiffs' Response:**  Defendant's statement of fact is contradicted by the overwhelming testimony of its management-level employees.  To wit, Gary Hodge, an SIU Supervisor for Region 6 answered "Yes" when he was asked "even for those [] individuals who have self-review or self-reporting authority, you still end up reviewing all of the files – or all of the reports that they draft at the end of the investigation, correct?"  (Pls.' Ex. 30, Hodge Dep. at 24:18-24, 71:13-72:15 (ECF No. 80-32).)  Similarly, Sharyl Derenthal, the SIU Manager for Region 2 (New York) confirmed in her deposition that all reports written by Investigators, whether interim or closing, are reviewed by an SIU Supervisor.  (Pls.' Ex. 28, Derenthal Dep. 43:24-44:10 (ECF No. 80-30).)  In other words, the record does not support Defendant's purported statement of fact, and actually supports the opposite—that all reports written by Investigators are reviewed by an SIU Supervisor.

**Defendant's Statement of Fact:**  "Plaintiffs' statement that "Throughout the life of an investigation, SIU Supervisors monitor Investigators' activities, by among other things, accessing their Microsoft Outlook calendars to see the amount and type of work they have

scheduled," contains an unsupported implication that there were other things. ECF No. 80-1 at 9." (Def.'s Mem. at 22.)

**Plaintiffs' Response:** Gary Hodge testified that he would both "review [the Investigator's] reports that he submitted" and "check his Outlook calendar see [sic] what kind of work he had." (Pls.' Ex. 30, Hodge Dep. At 36:22-37:5 (ECF No. 80-32).) Plaintiffs' statement that SIU Supervisors monitor Investigators' activities by doing more than simply reviewing their Outlook calendars is thus entirely supported by the testimony.

**Defendant's Statement of Fact:** "There is no evidence that the investigators take notice of the audits." (Def.'s Mem. at 23.)

**Plaintiffs' Response:** Plaintiffs submitted declarations from seven Plaintiffs in support of their Motion for Partial Summary Judgment. (See Pls.' Exs. 19-25 (ECF Nos. 80-21-27).) Each of the Plaintiffs testified that the grades they receive as a result of audits directly impact their pay, and that as a result, it is important for them to comply with the audit guidelines. And they testified that they spend "a considerable amount of time ensuring that [their] files all meet the requirements." (Id., ¶ 12.) Defendant cannot argue that these declarations are not a part of the record given that the parties and the Court specifically discussed this type of evidence when setting the summary judgment briefing schedule and gave Defendant several weeks to depose any Plaintiff who submitted a declaration in support of Plaintiffs' motion. Defendant chose not to depose any opt-in Plaintiffs. (Decl. of Matthew H. Morgan ¶ 3-6.)

**Defendant's Statement of Fact:** "Of [the sample of 676 closing reports produced by Defendant], at least 167 reports contain a written evidence of discretion and independent judgment, in addition to whatever discretion and independent judgment was exercised by investigators but not recorded." (Def.'s Mem. at 28.)

**Plaintiffs' Response:** Defendant improperly uses the phrase "discretion and independent judgment" to suggest that any employee who makes decisions in the course of their job duties satisfies the third prong of the administrative exemption.  Of course, Defendant conveniently omits the fact that the "exercise of discretion and independent judgment" must be "with respect to matters of significance."  Regardless of whether the 167 reports actually support Defendant's characterizations, these reports were reviewed, edited, and approved by SIU management before they were provided to claims adjusters.  (Pls.' Ex. 33, Rutzebeck 30(b)(6) Dep. 64:7-13 (ECF No. 80-35); Pls.' Ex. 31, Marine Dep. 59:4-19 (ECF No. 80-33).)

**ARGUMENT**

## I.    DEFENDANT BEARS A HEAVY BURDEN AT SUMMARY JUDGMENT.

Defendant goes to great lengths to muddy the very clear summary judgment standard for FLSA misclassification cases in the Fourth Circuit.  (See Def.'s Mem. at 29-30.)  But in the end, Defendant acknowledges that in the Fourth Circuit employers must prove that an employee falls within an exemption by clear and convincing evidence.  Desmond v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 692 (4th Cir. 2009); Clark v. J.M. Benson Co., Inc., 789 F.2d 282, 286 (4th Cir. 1986).  Defendant also acknowledges that the Court is obligated to narrowly construe exemptions *against* employers and *limit* their application to "persons 'plainly and unmistakably within their terms and spirit.'"  Auer v. Robbins, 519 U.S. 452, 462 (1997) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).  The Court's decision on the parties' cross-motions for summary judgment must be considered through this lens.

## II.    THE FLSA IS A REMEDIAL STATUTE INTENDED TO PROTECT ALL EMPLOYEES, INCLUDING INVESTIGATORS.

A recurring theme in Defendant's brief (and throughout this litigation) is the suggestion that Investigators do not deserve overtime pay because they are paid a salary, work from home

and in the field, are not directly supervised, and previously worked in exempt positions. Underlying this theme is the presumption that only the lowest paid workers are entitled to overtime compensation under the FLSA. But this presumption confuses the FLSA's overtime and minimum wage policy rationales. Congress did not enact the overtime provision of the FLSA solely to provide a minimum standard for low-skill workers incapable of bargaining to improve their status. Rather, Congress intended the overtime provision to stimulate job creation by making the hiring of employees more cost efficient in certain scenarios than the consistent overworking of existing employees. In other words, the overtime premium provision of the FLSA was meant "(1) to spread employment by placing financial pressure on the employer," and "(2) to compensate employees for the burden of a workweek in excess of the hours fixed in the Act." Walling v. Helmerich & Payne, 323 U.S. 37, 40 (1944); see also Jewell Ridge Coal Corp. v. Local 6167, United Mine Workers, 325 U.S. 161, 167 (1945); Donovan v. Brown Equip. & Serv. Tools, Inc., 666 F.2d 148, 152 (5th Cir. 1982); H.R. Rep. No. 75-1452 (1937); S. Rep. No. 75-884 (1937); see also Lee v. Vance Exec. Prot., Inc., 7 F. App'x 160, 164 (4th Cir. 2001) (citing Walling); Conway v. Takoma Park Volunteer Fire Dep't, Inc., 666 F. Supp. 786, 790 (D. Md. 1987) (same). The policy rationale is also readily apparent given that Congress passed the FLSA in the aftermath of the Great Depression. Overnight Motor Co. v. Missel, 316 U.S. 572, 578 (1942) ("In a period of widespread unemployment and small profits, the economy inherent in avoiding extra pay was expected to have an appreciable effect in the distribution of available work."). The policy rationale is just as important today as our economy slowly recovers from one of the worst recessions in recent history.

Defendant would have the Court ignore the clear and unambiguous policy rationales underlying the FLSA's overtime pay provisions. But the FLSA was enacted not only to protect

and benefit individuals who are hired, but also those who were never hired.  This crucial intent

should not be disregarded when analyzing the applicability of the administrative exemption—a

defense which must be construed narrowly against Defendant—to workers paid on a salary basis,

regardless of their background.  After all, the applicability of an exemption to the overtime

compensation requirement of the FLSA (particularly in the Fourth Circuit) is the exception, not

the rule.

III.  **PLAINTIFFS' PRIMARY JOB DUTY OF INVESTIGATING IS NOT RELATED TO DEFENDANT'S MANAGEMENT POLICIES OR GENERAL BUSINESS OPERATIONS.**

A.  <u>**Defendant Omits Important Regulations From Its Description of the Legal Framework.**</u>

The phrase "directly related to management policies or general business operations" in

the second element of the administrative exemption test refers to the type of work performed by

the employee.  29 C.F.R. § 541.201(a).  And, "[t]o meet this requirement, an employee must

perform work directly related to assisting with the running or servicing of the business."  <u>Id.</u>  The

regulation provides examples of this back-office type of work the Department of Labor considers

to be administrative:

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).

Defendant barely addresses these important regulations and fails to explain how Plaintiffs, whose primary job duty is undisputedly to conduct investigations, plainly and unmistakably perform work related to these functional areas.[3]

**B.      Plaintiffs' Investigatory Activities Are Not Directly Related to Management or Defendant's General Business Operations.**

The primary duty of SIs is to investigate insurance claims.  Such activities do not "directly relate to the management or general business operations of the employer."  See Gusdonovich v. Bus. Info., 705 F. Supp. 262, 265 (W.D. Pa. 1985); see also Adams v. United States, 78 Fed. Cl. 536, 554 (2007).  Indeed, by arguing that Plaintiffs' "support" of its claims function makes them exempt, Defendant essentially argues that its entire claims apparatus is administrative and thus not production.  (See Def.'s Mem. at 32.)  In Defendant's view, its purpose as an insurance company is simply to sell insurance policies.  (Def.'s Mem. at 1.)  But this makes little sense.  Defendant is different than, for example, a company that designs and markets pants, wrist watches, or soft drinks, where any interaction between the company and the customer after the sale of the product is outside of the company's core business purpose.  Courts have recognized this distinction, holding that the "primary purpose of insurance compan[ies] [is] paying claims made against policies."  Standard Sec. Life Ins. Co. of N.Y. v. West, 267 F.3d 821, 825 (8th Cir. 2001); see also Harris v. Superior Court, 144 Cal. Rptr. 3d 289, 2012 WL 2990020, at *7  (Ct. App. July 23, 2012) (holding that claims adjusters are not administrative employees and that their primary job duty of investigating and estimating claims, making coverage determinations, setting reserves, negotiating and making settlement recommendations,

---

[3] Defendant suggests in passing that Plaintiffs perform work related to legal and regulatory compliance because they sometimes refer investigations to government agencies.  But this minor aspect of Plaintiffs' work does not constitute their primary job duty and is thus not sufficient to satisfy this element of the exemption—even if referrals constituted "legal and regulatory compliance" under 29 C.F.R. § 541.201(b).

12

and identifying potential fraud are the day-to-day tasks of an insurance company and not

"directly related to management policies or general business operations."). Defendant's Vice-

President of Claims, Nancy Pierce, agrees. (Pls.' Ex. 32, Pierce Dep. 65:15-18 (ECF No. 80-34)

(Defendant's purpose is to sell insurance policies and to handle claims for insurance coverage

made by its policyholders.).) Plaintiffs' work can thus aptly be considered "production work"

because it is part of Defendant's core business purpose, not a back of the office administrative

function.

But even if the Court were to find that Plaintiffs are not engaged in production work, the

Court must continue its analysis to determine whether their job duties are administrative as

described by the governing regulations. Martin v. Ind. Mich. Power Co, 381 F.3d 574, 582 (6th

Cir. 2004); Schaefer v. Ind. Mich. Power Co., 358 F.3d 402, 402-03 (6th Cir. 2004).

Importantly, work does not automatically qualify as administrative simply because it does not

fall squarely in the production category. Martin, 381 F.3d at 582. And there is no "absolute

dichotomy under which all work must either be classified as production or administrative." Id.;

see also Schaefer, 358 F.3d at 402-03 (finding employee who was primarily responsible for

shipments of radioactive materials, inspecting containers, etc., is not engaged in administrative

work simply because he is engaged in an activity collateral to the principal business purpose of

producing electricity). Thus, even if an employee's primary duty appears to be ancillary to the

line function of the employer, courts must still ascertain whether the nature of that work fits

within the bounds of exempt administrative work. See Bothell v. Phase Metrics, Inc., 299 F.3d

1120, 1127-28 (9th Cir. 2002) (noting that not all ancillary work is administrative).

**C.**     **Defendant's Attempt to Distinguish Relevant Authorities on  Public/Private Grounds Should be Rejected.**

The regulations describe the types of jobs and work that the Department of Labor does not consider to be administrative:

> police officers, detectives … *investigators, inspectors ... and similar employees*, *regardless of rank or pay level*, who perform work such as … preventing or detecting crimes; *conducting investigations* or inspections for violations of law; performing surveillance … *interviewing witnesses*; interrogating and fingerprinting suspects; *preparing investigative reports; or other similar work*.

29 C.F.R. § 541.3(b) (emphasis added).  Consistent with the regulations, the Department of Labor and courts have repeatedly held that employees working as investigators and performing these job duties are non-exempt.  See Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA 2005-21, 2005 WL 3308592 (Aug. 19, 2005) [hereafter "2005 Opinion Letter"] (private background investigators with primary duty of performing "diligent and accurate fact-finding, according to DSS guidelines, the results of which are turned over to DSS who then makes a decision as to whether to grant or deny security clearances. Such activities, while important, do not directly relate to the management or general business operations of the employer within the meaning of the regulations."); Gusdonovich, 705 F. Supp. at 265.

Ignoring the regulation, Defendant's only argument against these and other similar authorities is that they do not apply to private investigators because they are limited to investigators working for government entities.  (Def.'s Mem. at 34-36.)  Of course, nothing in the plain language of section 541.3(b)(1) limits its scope to public-sector employees.  And the pre-2004 regulations, which courts can consider as illustrative, clearly state that private insurance company inspectors are generally non-exempt.  29 C.F.R. § 541.205(c)(2) (2003).  In addition, "inspectors" are listed next to "investigators" in the current section 541.3(b)(1), a clear sign that the regulation contemplates both private and public employees.

14

Another section, 541.203(j), highlights "public" inspectors and investigators as non-exempt.  But, the DOL makes clear that this "new example," was added in response to lobbying efforts by public employee groups who were "concern[ed] that … investigators, inspectors and parole officers would newly qualify for the administrative exemption. . . ."  69 Fed. Reg. 22,122 at 22,147 (Apr. 23, 2004).  This does not mean the DOL intended to create a private/public distinction.  Instead, these "straightforward examples" are "drawn from previous Wage and Hour opinion letters in which … the work involved was considered to be based on the employee's use of skills and technical abilities, rather than exercising the requisite discretion and independent judgment specified in the regulations."  Id. (citations omitted).  The same conclusion should be reached here.  See Zuber v. APC Natchiz, Inc., 144 F. App'x 657, 658 (9th Cir. 2005) ("Although Zuber was an inspector in the private rather than the public sector, the record indicates that his duties were substantially similar to those described in the regulations [section 541.203(j)] as an illustration of a non-exempt employee.").

### D.   Defendant's Authority is Unpersuasive and Distinguishable.

Defendant repeatedly attempts to draw parallels between the work performed by Plaintiffs and that of its exempt claims adjusters, citing decisions in which courts have found claims adjusters to be exempt administrative employees.  But the cases Defendant relies upon, including Robinson-Smith v. GEICO, 590 F.3d 886 (D.C. Cir. 2010), In re Farmers Ins. Exch., Claims Reps.' Overtime Pay Litig., 481 F.3d 1119 (9th Cir. 2007), Roe-Midgett v. CC Servs., Inc., 512 F.3d 865 (7th Cir. 2008), Cheatham v. Allstate Ins. Co., 465 F.3d 578 (5th Cir. 2006) and Marting v. Crawford & Co., 2006 WL 681060 (N.D. Ill. Mar. 14, 2006), are clearly distinguishable because the plaintiffs in each case were insurance adjusters, not investigators.  Unlike investigators, the regulations explicitly state that insurance adjusters are generally exempt administrative employees.  See 29 C.F.R. § 541.203(a).

15

The cases Defendant relies on that do involve investigators were wrongly decided or are distinguishable.  In Stout v. Smolar, 2007 WL 2765519 (N.D. Ga. Sept. 18, 2007), the court concluded with little analysis that the plaintiff's job was administrative, but its holding that the exemption applied was primarily based on the amount and extent of the plaintiff's independent judgment and discretion with respect to matters of significance. Moreover, the Stout court distinguished the work of the plaintiff from the work of an insurance investigator with a primary duty of investigating insurance claims.  In Mullins v. Target Corp., 2011 WL 1399262 (N.D. Ill. Apr. 13, 2011), the plaintiff was an investigator within Target's "Assets Protection" division, responsible for analyzing, evaluating, and recommending courses of action related to shoplifting. The case is distinguishable, however, because Target is a retail business and not an insurance company, thus the investigation of shoplifting is an internal function that services its business whereas Plaintiffs investigations are part of the very service and product that Defendant sells.[4]

Ahle v. Veracity Research Co., 738 F. Supp. 2d 896 (D. Minn. 2010) and Foster v. Nationwide Mutual Ins. Co., 695 F. Supp. 2d 748 (S.D. Ohio 2010) were simply wrongly decided.  In Ahle, the court correctly found that the plaintiff insurance investigators were non-exempt, but mistakenly concluded they performed administrative duties.  The Foster court modeled its administrative exemption analysis on Ahle, so many of the flaws in the Ahle opinion are present in Foster.[5]  In short, Ahle and thus Foster make three crucial errors in analyzing the administrative exemption.  First, Ahle mistakenly criticized Gusdonovich for failing to sufficiently consider the relationship "between [insurance investigators'] primary duties and the core business function of the defendant's clients," (i.e., the insurance companies).  Ahle, 738 F.

_____

[4] Defendant's reliance on the Department of Labor's September 8, 2006 Opinion Letter (Opinion Letter FLSA2006-30, 2006 WL 2792444) involving department store loss prevention managers is similarly distinguishable and unpersuasive.  (Def.'s Mem. at 31, 34.)

[5] Foster is presently on appeal before the Sixth Circuit Court of Appeals.

Supp. 2d at 904.  This criticism is misplaced.  <u>Gusdonovich</u> correctly held that insurance

investigators' primary duty was "'producing' information for its clients, and the plaintiff's duties

consisted almost entirely of gathering that 'product.'"  705 F. Supp. at 265.  Because

investigating, fact-finding, and gathering information are not administrative duties under the

regulations, there was no need for the court in <u>Gusdonovich</u> to inquire about why or how the

client used the information.

Second, the <u>Ahle</u> court erred on the terms of its own analysis by characterizing the duties

of insurance investigators as ancillary to an insurance company's core business function.  For the

reasons already discussed, the duties of insurance investigators go to the core purpose of any

insurance company's business and are there for not administrative.  Third, and most

fundamentally, the <u>Ahle</u> court erred by ending its analysis following its conclusion that insurance

investigators' job duties were ancillary to an insurance company's business.  But the analysis

cannot stop there—courts must continue to ask whether the particular job duties at issue are

administrative as described by the governing regulations.  <u>Martin v. Ind. Mich. Power Co</u>, 381

F.3d 574, 582 (6th Cir. 2004); <u>Schaefer v. Ind. Mich. Power Co.</u>, 358 F.3d 402, 402-03 (6th Cir.

2004).

## IV.   INVESTIGATORS DO NOT EXERCISE DISCRETION AND INDEPENDENT JUDGMENT WITH RESPECT TO MATTERS OF SIGNIFICANCE.

### A.   <u>Defendant Incorrectly Describes the Regulation.</u>

To satisfy the third element of the administrative exemption, Defendant must prove by

clear and convincing evidence that Plaintiffs plainly and unmistakably have a "primary duty

[which] includes the exercise of discretion and independent judgment ***with respect to matters of

significance***."  29 C.F.R. § 541.200(a) (emphasis added).  Defendant wrongly argues that it

satisfies the element by simply offering "any undisputed evidence that the employees' primary

17

duty included *some* exercise of discretion and independent judgment." (Def.'s Mem. at 30 (emphasis in original).) Defendant's interpretation wholly ignores the element's clear requirement that the employee's exercise of discretion and independent judgment must be with respect to a matter of significance. Under Defendant's reading of the statute, any evidence that an employee makes any decision, regardless of its importance to the employer, would be sufficient to satisfy the element. This cannot be what Congress or the Department of Labor intended because if it were, "the exemption would swallow the rule" and would encompass almost any employee. Roney v. United States, 790 F. Supp. 23, 28 (D.D.C. 1992).

Later in its brief, Defendant also mischaracterizes the holding in Counts v. South Carolina Elec. and Gas Co., 317 F.3d 453 (4th Cir. 2003). (Def.'s Mem. at 37.) In Counts, the plaintiffs admitted that they were properly classified as exempt administrative employees except for periods of thirty-five to forty days every eighteen months when they were temporarily reassigned to non-exempt jobs. 317 F.3d at 454. The Counts court affirmed the district court's order granting summary judgment in favor of the employer, holding that the district court properly considered the employees' primary job duties over time, and not on a day-by-day or even month-by-month basis. Id. at 457. Defendant's reference to the Counts court's use of a "holistic approach" is thus inapt given that the case presented a unique legal theory based on the temporal scope of the exemption, a theory that Plaintiffs are not advancing in this case.

Defendant also relies on Robinson-Smith for a similar proposition, that administratively exempt employees do not have one primary job duty, but rather perform administrative duties generally. (Def.'s Mem. at 37.) But Robinson-Smith was decided under the pre-2004 regulations, and thus did not consider new regulations, which explains that "[t]he term "primary duty" means the principal, main, major or most important duty that the employee performs." 29

18

C.F.R. § 541.700.  In other words, the new regulations require the Court to determine a primary

duty, as opposed to some amalgam of duties as Defendant suggests.

   **B.      Claims Adjuster Cases Relied Upon By Defendant are Inapposite.**

   Again trying to link the work of claims adjusters to the work of Investigators, Defendant

takes parts of cases that hold that claims adjusters are exempt administrative employees and

argues that the Court should find that Plaintiffs are similarly exempt because they allegedly

perform some of the same job duties.  (Def.'s Mem. at 38-42.)  These arguments must be

rejected.  The claims adjusters in these cases had job duties which allowed them to exercise far

more discretion and independent judgment than Plaintiffs, in far more meaningful ways:

   Robinson-Smith: auto damage adjusters who "spend a majority of their time appraising
   damaged vehicles and estimating repair costs but also negotiate and settle claims with
   body shops over repair costs and with insureds over total loss vehicles." 590 F.3d at 888.

   Roe-Midgett: material damage appraisers responsible for "investigating auto accident
   damage, making repair or replacement determinations, drafting estimates, and settling
   claims of up to $12,000 where liability has been established and coverage approved."
   512 F.3d at 868.

   In re Farmers: claims adjusters "determine whether the loss is covered, set reserves,
   decide who is to blame for the loss and negotiate with the insured or his lawyer."  481
   F.3d at 1124.

   Cheatham: claims adjusters who, among other things set reserves, determined whether
   coverage should be approved or denied, determined liability, and negotiated claims.  465
   F.3d at 585 n.7.

   McAllister v. Transamerica Occidental Life Ins. Co.: claims coordinator handling "the
   most complex life claims" with "authority to approve contestable claims up to $150,000
   [and] incontestable claims up to $250,000."  325 F.3d 997, 998 (8th Cir. 2003).

   Withrow v. Sedgwick Claims Mgmt. Serv., Inc.: claims examiners who, among other
   things, determined whether requested medical care was related to a compensable injury,
   assessed the value of claims and determined whether an appropriate reserve had been set,
   reviewed legal bills, and directed the course of the litigation.  2012 WL 242773, at *7
   (S.D. W. Va. Jan. 25, 2012).

   Marting: claims adjuster who negotiated, assessed, and settled claims.  2006 WL 681060,
   at *12.

> Jastremski v. Safeco Ins. Cos.: insurance adjuster "contacted the claimant, reviewed the policy to determine if the claimed loss was covered, determined the dollar value of the claim, told defendant the amount he determined as the value of the loss (called "setting a reserve"), and negotiated a settlement with the claimant." 243 F. Supp. 2d 743, 746 (N.D. Ohio 2003).

Plaintiffs, on the other hand, had none of these very important and significant job duties. The record is clear that they did not negotiate, they did not settle, and they did not set the course for litigation. As the Ahle court held, "[e]quating [] claims investigators to claims adjusters is not a fair comparison or particularly helpful. The core function of a claims adjuster is to decide whether and to what extent an insurance claim should be paid, a task that requires considerable exercise of discretion on a matter of significance. Inclusion of the term "adjuster" in the title of the job strongly suggests that conclusion." 738 F. Supp. 2d at 908. The same is true here, and the Court should follow the plain language of the regulations and find that claims adjusters are exempt administrative employees, but Investigators are not.

### C.  Plaintiffs Do Not Resolve Matters of Significance.

Defendant relies on one of ten illustrative factors contained in 29 C.F.R. § 541.202(b) to support its exemption defense: "whether the employee investigates and resolves matters of significance on behalf of management." (Def.'s Mem. at 37.) This factor is inapplicable to Investigators because fact finding and investigative activities performed by Investigators in the course of an investigation do not constitute resolving matters of significance. This was made clear by the Department of Labor's 2005 Opinion Letter. And as part of that Opinion Letter, the Department of Labor explains that "resolving" in the investigator context means developing further information when a discrepancy or inconsistency exists, which does not satisfy the exemption:

> *If any discrepancies or inconsistencies develop during the course of the investigation, the Investigators must resolve the information in accordance with*

> *broad DSS guidelines.*  These guidelines offer only the minimum efforts that an
> Investigator must pursue.  Additional investigation is permitted at the
> Investigator's discretion to resolve any issues that still exist.  As an example, the
> subject of an investigation may provide the Investigator with information about
> his activities that appear questionable or inconsistent with documents that the
> Investigator has already reviewed.  If so, the Investigator is empowered to
> interview other individuals or check records to develop further information.

2005 Opinion Letter at *2 (emphasis added).  Plaintiffs' investigations inherently contain

inconsistencies, and much like the non-exempt investigators in the 2005 Opinion Letter, they

must "resolve" the inconsistencies, which do not amount to matters of significance.

### D.      <u>Investigators' Limited Discretion Does Not Relate to Matters of Significance.</u>

In <u>Ahle</u>, the court explained that "all employees exercise some discretion in deciding how

to perform their jobs, and the way in which they exercise that discretion likely will affect matters

of significance. . . .  But an exercise of discretion that impacts or affects a matter of significance

is not exercising discretion with respect to a matter of significance. If the rule were otherwise, all

employees would arguably meet the third element of the definition of administrative employees."

738 F. Supp. 2d at 908.  Defendant's deep reliance on Plaintiffs' "actual reports" of their

investigations to purportedly show that Plaintiffs exercised discretion and independent judgment

are, therefore, of little relevance.  Indeed, the Department of Labor's regulations recognize that

the work of non-exempt employees may impact matters of serious significance to the employer,

but still finds that those employees' job duties do not satisfy the element:

> [A] messenger who is entrusted with carrying large sums of money does not
> exercise discretion and independent judgment with respect to matters of
> significance even though serious consequences may flow from the employee's
> neglect. Similarly, an employee who operates very expensive equipment does not
> exercise discretion and independent judgment with respect to matters of
> significance merely because improper performance of the employee's duties may
> cause serious financial loss to the employer.

29 C.F.R. § 541.202(f).[6]  To this point, the <u>Ahle</u> court explained that in the insurance investigator context, an investigator who exercises discretion and independent judgment that affects a matter of significance—the claim's adjuster decision on the claim—is not exercising discretion and independent judgment with respect to a matter of significance.  738 F. Supp. 2d at 908. Similarly, in <u>Fenton v. Farmers Ins. Exch.</u>, 663 F. Supp. 2d 718 (D. Minn. 2009) the court explained that "although an employee need not perform all of the duties of claims adjusters listed [at 29 C.F.R. § 541.203(a)] to qualify as exempt […] that list includes a variety of significant, discretion-laden activities that are undisputedly not present here, such as 'negotiating settlements' and 'making recommendations regarding litigation.'" <u>Id.</u> at 727.  And, it is improper to extend the regulation to Investigators when their job duty is to "gather facts" for claims adjusters and they are "formally barred from presenting their opinions about how to handle claims in their written reports." <u>Id.</u>  The same facts are present in this case, and the same conclusion should follow: Plaintiffs do not exercise discretion and independent judgment with respect to matters of significance and are therefore not covered by the administrative exemption.

## <u>CONCLUSION</u>

Defendant's burden is difficult: it must prove must prove by clear and convincing evidence that Plaintiffs' primary job duty as Investigators plainly and unmistakably satisfies each element of the administrative exemption.  Here, Plaintiffs' primary job duty is to investigate claims.  They do this by performing tasks like interviewing witnesses, preparing investigation

---

[6] Defendant argues that this regulation is inappropriate because Investigators' "are directly involved in resolving potentially fraudulent claims." (Def.'s Mem. at 42.)  But Defendant ignores the undisputed fact that it is "the Claims Adjuster's job to determine whether to deny or pay a claim" (Plttfs' Ex. 33, Rutzebeck 30(b)(6) Dep. 66:12-17 (ECF No. 80-35)).  Indeed, the primary job duty of Defendant's Claims Adjusters is to "adjust[]insurance claims by investigating, assessing and resolving them." (Ex. 2, Declaration of John W. Pham ¶ 3.)  Investigators' primary job duty, by contrast, is to investigate.

reports, and following up on leads, all work that the Department of Labor and courts have

repeatedly held is not administrative and does not require the use of independent judgment and

discretion with respect to matters of significance.  Because Defendant cannot meet its burden, its

motion must be denied and Plaintiffs' motion for summary judgment should be granted.


Respectfully Submitted,


Date: August 6, 2012                          /s/
                                 **NICHOLS KASTER, PLLP**
                                 Paul J. Lukas, MN State Bar No. 22084X
                                 (admitted *pro hac vice*)
                                 Matthew H. Morgan, MN State Bar No. 304657
                                 (admitted *pro hac vice*)
                                 Timothy C. Selander, MN State Bar No. 0387016
                                 (admitted *pro hac vice*)
                                 4600 IDS Center, 80 South 8th Street
                                 Minneapolis, MN 55402
                                 Telephone (612) 256-3200
                                 Fax (612) 215-6870
                                 lukas@nka.com
                                 morgan@nka.com
                                 selander@nka.com


                                          /s/
                                 (signed by Matthew H. Morgan with
                                 permission of Sundeep Hora)
                                 **ALDERMAN, DEVORSETZ & HORA PLLC**
                                 Sundeep Hora, MD State Bar No. 28208
                                 1025 Connecticut Avenue NW, Suite 615
                                 Washington, D.C. 20036
                                 Telephone (202) 969-8220
                                 Facsimile (202) 969-8224
                                 shora@adhlawfirm.com

                                 ATTORNEYS FOR PLAINTIFFS AND THE
                                 NEW YORK RULE 23 CLASS

23