## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| | * | |
| **SAMUEL CALDERON**, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Case No.: RWT 10-1958 |
| | * | |
| **GEICO GENERAL INSURANCE** | * | |
| **COMPANY**, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**\*\*\***

## MEMORANDUM OPINION

On July 19, 2010, Plaintiffs filed a one-count complaint on behalf of a collective class to recover overtime pay allegedly withheld by Defendants (collectively, "GEICO") in violation of the Fair Labor Standards Act ("FLSA").  Doc. No. 1.  Plaintiffs maintain that the position of Security Investigator was improperly classified by GEICO as exempt from overtime under the FLSA.  Plaintiffs moved for Conditional Certification and Judicial Notice pursuant to 29 U.S.C. § 216(b) on October 22, 2010.  Doc. No. 23.  This Court granted the motion on January 12, 2011. Doc. Nos. 31, 32.  Plaintiffs' counsel mailed a court-approved judicial notice to the putative opt-in plaintiffs on January 26, 2011, and the notice period ended ninety days later on April 26, 2011.  There are now forty-nine current and former Security Investigators in this case.

Following the close of the notice period, the parties filed a stipulation permitting Plaintiffs to amend the Complaint, Doc. No. 56, which this Court granted on June 1, 2011.  Doc. No. 57.  The Amended Complaint added an individual and Rule 23 class action claim for overtime pay by opt-in Plaintiff Tom Fitzgerald under New York state law.  Doc. No. 56.  On August 15, 2011, Plaintiffs filed a Motion to Certify Class Under Rule 23.  Doc. No. 61.

On January 30, 2012, a hearing was held on Plaintiffs' motion to certify a Rule 23 class under New York state law.  On February 14, 2012, this Court issued a Memorandum Opinion and Order that granted the Plaintiffs' motion, and directed the parties to jointly submit a proposed notice to the class for approval by the Court.  Doc. Nos. 67, 68.  On March 9, 2012, this Court entered an order approving the Plaintiffs' proposed Rule 23 class notice.  Doc. No. 78.  On March 1, 2012, the parties filed a stipulation permitting the Plaintiffs to file a second amended class action and collective action complaint ("Second Amended Complaint"), Doc. No. 73, which this Court granted on March 9, 2012.  Doc. No. 76.  GEICO filed its Answer to the Second Amended Complaint on March 5, 2012.  Doc. No. 74.

On May 11, 2012, Plaintiffs filed a Motion for Partial Summary judgment.  Doc. No. 80. On July 16, 2012, GEICO filed an Opposition to Plaintiffs' Motion for Partial Summary Judgment and a Cross-Motion for Summary Judgment.  Doc. No. 86.  On November 5, 2012, this Court held a hearing on the parties' cross-motions for summary judgment.

## BACKGROUND FACTS

The Plaintiffs are current and former Security Investigators (hereinafter, "Investigators" or "Plaintiffs") who worked for GEICO.  Doc. No. 80 at 1.  GEICO classifies its Investigators as exempt from the overtime pay protections of the FLSA.  *Id.*  GEICO is in the business of providing insurance to its policyholders.  Rutzebeck Dep. 39:22-40:4.[1]  Its purpose is to sell insurance policies and handle customers' claims.  Pierce Dep. 65:15-18.[2]

When a policyholder submits a claim for insurance coverage to GEICO, it is handled by an employee called a Claims Adjuster in the Claims Department.  *See* Doc. No. 80, Ex. 1 at

---

[1] Steven Rutzebeck is the Director of Claims Security/Special Investigations Unit.

[2] Nancy Pierce is the Vice-President of Claims.

NKA0001272-1279.  The Claims Department is divided into a Liability Division and an Auto Damage Division.  *Id*. at NKA0001268.  The Claims Adjuster determines whether to pay or deny a claim, *see* Rutzebeck Dep. 66:12-17, and his primary job is to "adjust[] insurance claims by investigating, assessing, and resolving them."  Doc. No. 80, Ex. 2 Pham Dec. ¶ 3.[3]

The Investigators work in the Special Investigations Unit ("SIU"), which is part of the Claims Department.  *Id.*, Ex. 1 at NKA0001269.  They occupy the lowest level of the SIU.  The Investigator reports to a Supervisor, the Supervisor reports to a Manager, and the Manager reports to the Assistant Vice-President of Claims.  Rutzebeck Dep. 19:7-19.  GEICO divides Security Investigators into eight regions across the country.  *Id.* 20:20-21:8.  Outside of California, GEICO employs approximately 250 Investigators who normally work out of their homes and connect into GEICO's network through the internet.  *Id.* 46:25-47:4.

The primary job of Investigators is to conduct investigations.  *Id*. 46:2-8.  (Investigators "prevent fraud by investigating claims suspected of being fraudulent, educating GEICO adjusters about fraud and serving as liaisons to law enforcement and regulatory agencies.").  They spend approximately "90 percent of their time" on investigations.  *Id.* 47:22-24.  Michael College, the former Operations and Training Manager for SIU from February 2003 until March 2011, described the main job of an Investigator as "assist[ing] a claims examiner in uncovering" the facts of a claim and how the claim was reported to GEICO.  College Dep. 21:7-18.

The claims process begins when a computer program called Intelligence Claims Evaluation ("ICE") "flags" a policyholder claim that exhibits indicia of fraud.  Rutzebeck Dep. 17:11-13.  The flagged claims are then reviewed by an Intake Associate.  *Id.* 28:17-29:24.  If the

---

[3] At the time he signed the declaration, John Pham was employed by GEICO as Assistant Vice-President of Claims for Region 2.

Intake Associate determines that the claim needs further investigation, he will refer it to either the appropriate regional SIU Supervisor or to an Investigator. *Id.* 27:8-22. If the referral is sent to the SIU Supervisor, he will assign the matter to an Investigator. *Id.* 28:23-29:1. An Investigator has no control in deciding whether a claim is going to be investigated. *Id.* 27:5-7.

After an Investigator receives the referral, he is required to adhere to "written procedures for the investigation of possible suspected insurance fraud." Doc. No. 80, Ex. 3 at NKA000837. GEICO requires that the investigation include:

> 1. A thorough investigation of the referral.
>
> 2. Identification and interviews of potential witnesses who may provide information on the accuracy of the claim and/or application.
>
> 3. Utilizing industry recognized databases as deemed necessary in conducting investigations.
>
> 4. Preservation of documents and other evidence.
>
> 5. Writing a concise and complete summary of the investigation, including the investigators findings regarding the suspected insurance fraud and the basis for their findings.

*Id.* The investigatory process involves an administratively-regulated four-step procedure: (1) receive an assignment, (2) create a plan of action, (3) gather evidence, and (4) create a written report memorializing the investigation. Rutzebeck Dep. 51:4-10. Investigators are not allowed to deviate from this process without pre-approval from a superior. Derenthal Dep. 32:4-10.

When an Investigator is assigned a claim, he will perform the "pre-work" of reviewing the claim, any attached documents, and public records, if necessary. Rutzebeck Dep. 52:14-21. The plan of action requires the Investigator to "determine what activities [he] need[s] to perform in order to investigate the particular circumstances of that particular case." *Id.* 55:21-23. The plan of action contains instructions like, "conduct a complete background investigation of the

4

insured," "inspect vehicle," "contact alibi witness . . . and interview him about the circumstances of the case," and "contact [the police] to determine who is assigned to the case."  Doc. No. 80, Ex. 17 at NKA0012436; Ex. 18 at NKA0011257.  After completing the plan of action, the Investigator enters it into the SIU Case Management System, or SICM.  Rutzebeck Dep. 56:7-17.

An Investigator then begins the third step in the process: gathering evidence.  To complete this task, the Investigator interviews witnesses, takes photographs, and reviews property damage, among other evidentiary-gathering procedures.  *Id.* 56:21-57:2.  Investigators may also interview an insurance claimant in a more formalized face-to-face interview called an examination under oath ("EUO").  *Id.* 72:18-73:21.  Claimants are required to engage in a EUO if asked to do so by GEICO.  Doc. 80, Ex. 6 at NKA0000655.  The difference between a normal interview and an EUO is that the latter requires the interviewee to be under oath.  The purpose of the EUO is to (1) "obtain or clarify information necessary to properly handle a claim," (2) "provide an opportunity for an insured to explain or further substantiate their claim," (3) "eliminate as many gray areas as possible," (4) "evaluate the insured as a witness," and (5) "preserve testimony."  *Id.* at NKA0000656.

GEICO maintains that "[a]n interview of a policyholder or other claimant suspected of fraud requires tactical decisions by the investigator."  Doc. No. 86 at 5.  It contends that although "GEICO has issued lists of suggested interview questions for certain types of suspected fraud," each interview is different and requires questions and tactics unique to the situation.  *Id.* at 5-6.  For example, an "investigator must decide whether to ask open-ended or leading questions and whether or not to disclose what he has learned already," and he "formulates follow-up questions based on the answers to initial inquiries."  *Id.* at 6.  Investigators also "observe[] body language to see if the witness is being deceptive."  *Id.*  GEICO disputes Plaintiffs' contention that

Investigators rely on questions created by the company.  *Compare* Doc. No. 80 at 11 *with* Doc. No. 86 at 8.

After the investigation is complete, the Investigator completes an initial report, makes appropriate referrals, and submits the report to a supervisor for review.  Derenthal Dep. 58:12-18.  The Investigator must also call the Claims Adjustor to discuss his initial findings.  *Id.* 58:19-59:12.  Approximately 40 to 50 investigators out of 250 have self-approval authority over both their interim and final reports, which means "that they can approve their reports without supervisory approval."  Rutzebeck Dep. 59:6-60:22.  For those Investigators who do not have self-approval authority, they must submit their initial and final reports to a supervisor for review.  Assuming that the Claims Adjustor agrees with the Investigator's findings, the Investigator writes the final report, which is the fourth step of the process.  "The report will be forwarded to a supervisor for final approval," and if the Investigator does not have self-approval capability, the supervisor will "score the overall report on a 1-to-5" scale and the report is approved.  *Id.* 61:20-25.

Investigators are instructed that "it is imperative that if [they] include any conclusions or recommendations, that they be totally substantiated by the information [they] listed in the body of the report."  *Id.* 107:25-108:3.  Steven Rutzebeck testified that this means that an Investigator's "speculations and things like that are not appropriate, that [an Investigator's] conclusions and . . . recommendations need to be based on the facts and evidence that allows [the Investigator to] make those conclusions."  *Id.* 108:7-11.  The SIU Administration and Operations Manual states that Investigators' "[r]eports will be free of innuendoes, opinions or rumors. Reports will be based upon objective findings, observations, and physical evidence or other pertinent documentation."  Doc. No. 80, Ex. 4 at NKA0000733.  Additionally, the

6

recommendations provided "shall be based upon the facts of the investigation" and "should not include statements regarding payment of claim unless required by state law."  *Id.*

When Investigators are preparing to close a file, they may, if they deem it appropriate, refer the claim to the National Insurance Crime Bureau ("NICB") or other state agencies based on a finding of fraud.  An Investigator does not need input from management or a claims examiner to make a referral.  Derenthal Dep. 51:5-53:25.  In instances where an SIU Supervisor believes that a referral is necessary but was not made, he will direct an Investigator to make the referral.  Hodge Dep. 94:13-21.  Once a referral has been made, the Investigator does not have control over the information or how NICB may use it.  Derenthal Dep. 54:6-11.  Claims Adjusters do not have access to referrals to NICB.  Doc. No. 80 at 14.

GEICO maintains strict control and oversight over the reports that the Investigators complete.  Investigators are required "to write their initial, interim, and final reports according to specific template[s]."  *Id.* at 15; *see* Doc. No. 80, Ex. 8 at NKA 0000872-874; Ex. 10 at NKA0000425-427.  The parties disagree whether "[a]ll reports, whether initial, interim, or final, are reviewed by SIU Supervisors" for every Investigator or only those without self-approval authority.  *Compare* Doc. No. 80 at 15 ("All reports, whether initial, interim, or final, are reviewed by SIU Supervisors, even for the small number of Investigators with 'self-approval' authority.") *with* Doc. No. 86 at 16 ("The supervisors review the closing reports for investigators not on self-approval.").  GEICO's "regulations and corresponding review of Investigators['] reports scrutinize not only the content of the report (i.e., the investigative activities performed during an investigation), but also the minutiae, including Investigators' proper use of grammar, punctuation, and formatting."  Doc. No. 80 at 15 (citing Exs. 5, 8-10, 19-25).  If a Supervisor finds a deficiency in a report, he will contact the Investigator and tell him to make corrections.

Derenthal Dep. 45:7-15.  "The purpose of SIU Supervisor reviews of Investigators' reports is to make sure that reports conform to [GEICO's] expectations."  Doc. No. 80 at 17.  The Supervisor ensures that "the investigator has included everything the examiner needs in the report." Derenthal Dep. 78:19-23.

Once an Investigator self-approves a report or it is approved by a supervisor, the report "is electronically transmitted to the referring adjuster.  The adjuster does not have access to SICM.  He sees only the report."  Doc. No. 86 at 17.  After the report is finalized, the Investigator speaks to the Claims Adjuster.  GEICO maintains that "[t]ypically, the adjusters do not look at the whole report, and rely on the oral report and summary."  *Id.*  The Claim Adjuster's decision on a claim is "based on essentially what the [I]nvestigator tells them." Derenthal Dep. 74:23-24.

Each year during GEICO's audit, it "review[s] four files from each investigator for a number of standards, particularly focusing primarily on report format."  Rutzebeck Dep. 22:7-10. The audit is conducted in accordance with a "File Audit Guide" created by GEICO.  Doc. No. 80, Exs. 11, 12.  The File Audit Guide measures "the SIU efficiency ratio, the file compliance, [and] the file quality."  Marine Dep. 40:13-20.  Investigators are given scores ranging from one (the lowest) to five (the highest) within these measures, "based on their communication during the investigation, their plan of action, the thoroughness of their investigation, and the readability of their report."  Doc. No. 80 at 18 (citing Marine Dep. 40:21-41:12).

## STANDARD OF REVIEW

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006).  A

material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).   A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49.   However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986).   "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).

The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24).   When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).   "When considering each motion the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Id.*

**ANALYSIS**

**I.       FLSA Administrative Function Exception**

Section 206 of the FLSA requires that employers pay employees "engaged in commerce or the production of goods for commerce" the minimum wage set by statute.   29 U.S.C. § 206(a)(1).   Section 207 prohibits employers from employing workers "engaged in commerce or the production of goods for commerce" for more than forty hours per week unless the employer pays the employee at the rate of one and one-half times his regular rate for the hours worked in excess of forty hours.   *Id.* at § 207(a)(1).   Relevant here, Congress exempted employees "employed in a bona fide executive, administrative, or professional capacity" from these wage requirements.   *Id.* § 213(a)(1).

In the Fourth Circuit, an employer bears the burden of proving, "by clear and convincing evidence," that an employee falls within the administrative exception.   *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 691 (4th Cir. 2009) (citing *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993)).   "FLSA exemptions are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within the exemptions' terms and spirit.'"   *Id.* at 692 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)) (internal bracketing omitted).

"The Secretary of Labor has adopted regulations that set forth a three-part test for determining whether an employee is subject to the administrative exemption: (1) the employee must be compensated at a salary rate of not less than $455 per week; (2) the employee's primary duty must consist of 'the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers'; and

(3) the employee's primary duty must 'include[] the exercise of discretion and independent judgment with respect to matters of significance.'"  *Id.* at 291 (quoting 29 C.F.R. § 541.200).

The parties agree that the Investigators are compensated at a salary rate not less than $455 per week; thus, there are two elements at issue: (1) whether the Plaintiffs' primary job duty as Investigators consists of the performance of office or non-manual work directly related to GEICO's management or general business operations; and (2) whether the Plaintiffs' primary job duty includes the exercise of discretion and independent judgment with respect to matters of significance.  *See* 29 C.F.R. § 541.200(a)(2), (3).

### a.  The Investigators' Primary Job Duty is Administrative in Nature.

The applicable FLSA regulations provide guidance in determining whether an employee's primary job duty is administrative in nature, thus satisfying the administrative exemption requirement.  "To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers."  29 C.F.R. § 541.201(a).  "The term 'primary duty' means the principal, main, major or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  *Id.* § 541.700(a).  "The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee."  *Id.* § 541.201(a).  An employee meets this requirement if he "perform[s] work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  *Id.*

11

The regulations provide a non-exhaustive list of work that is "directly related to management or general business operations," including:

> work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

29 C.F.R. § 541.201(b). Plaintiffs maintain that "the undisputed evidence in this case confirms that [their] primary job duty as Investigators is to conduct investigations. The weight of authority holds that employees with such a primary duty are not administratively exempt and are entitled to overtime pay because investigating is not directly related to the employer's management or general business operations." Doc. No. 91 at 2. Plaintiffs also contend that their "work as Investigators is production work and does not . . . fall into any of the categories of back-office work considered to be administrative by the [DOL]." *Id.*

GEICO argues that its Investigators "perform administrative-type work. They do not produce insurance policies. Rather, they support the claims function by investigating suspicious claims and preventing loss due to fraud." Doc. No. 86 at 32. GEICO maintains that the Investigators "perform a subset of the work specifically listed as exempt when performed by the adjusters." *Id.* According to GEICO, "[t]he nature of the work, and its relationship to GEICO's overall business purpose, does not change when it is assigned to investigators instead of adjusters." *Id.*

### i. The Administrative-Production Dichotomy Analysis Does Not Work for the Primary Duty Analysis Here.

In determining whether a set of job duties qualifies as administrative, courts may rely on the "imperfect" "administrative-production dichotomy," *Desmond*, 564 F.3d at 694, which is

intended to distinguish "between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to running the business itself." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002) (citation omitted).   The inquiry is intended to determine whether the "work 'is directly related to management policies or general business operations,' not as an end in itself."   *Id.*; *see Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282, 287 (4th Cir. 1986) ("The regulations emphasize the nature of the work, not its ultimate consequence.").

Work is not classified as administrative simply because it does not fit completely within the definition of production.   "'On the contrary, non-manufacturing employees can be considered 'production' employees in those instances where their job is to generate (i.e., 'produce') the very product or service that the employer's business offers to the public.'"   *Desmond*, 564 F.3d at 694; *see also Foster v. Nationwide Mut. Ins. Co.*, 695 F. Supp. 2d 748, 756 (S.D. Ohio 2010) ("Under this dichotomy, employees who are engaged in work related to their employers' administrative operations may qualify for the administrative exemption, while those who perform 'production' work cannot."); *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 582 (6th Cir. 2004) ("The regulations do not set up an absolute dichotomy under which all work must either be classified as production or administrative.").

For example, in *Desmond*, the Fourth Circuit reversed the district court's order granting summary judgment in favor of the employer on the applicability of the administrative exemption. Horseracing officials brought suit against the racetrack operator for unpaid overtime compensation under the FLSA.   The employer operated a casino and horse racing facility and employed racing officials who "assisted in various tasks associated with . . . live horse races." *Desmond*, 564 F.3d at 689.   During the races, the racing officials "fulfilled one of several roles,

which required them to observe and examine the horses, the jockeys, the trainers or grooms, the relevant paperwork for the horses, the order of finish for the race, or the paperwork associated with any subsequent claims." *Id.* at 694.

The Fourth Circuit, relying on the administrative-production dichotomy, found that the employees' work "consisted of tasks somewhat similar to those performed 'on a manufacturing production line or selling a product in a retail or service establishment.'" *Id.* (quoting 29 C.F.R. § 541.201(a)). It reasoned that the employees "have no supervisory responsibility and do not develop, review, evaluate, or recommend Charles Town Gaming's business policies or strategies with regard to the horse races." *Id.* The court concluded that, "[s]imply put, the [employees'] work did not entail the administration of the running or servicing of [the empoer's] business of staging live horse races." *Id.* The court also found that the employees "were not part of the management of [the business] and did not run or service the general business operations." *Id.* It held that "[b]ecause the [employees'] duties are not directly related to the general business operations of [the employer], the position does not satisfy the requirements for the administrative exemption under the FLSA." *Id.* at 695.

Similarly, in *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 582 (6th Cir. 2004), the Sixth Circuit held that information technology support specialists were non-exempt employees under the FLSA because they performed troubling-shooting on other employees' computers. The court rejected the employer's argument that the plaintiff's work was exempt under the administrative exemption because his work was not production work; "[t]hat is, he is not producing electricity because he is not an 'operator' running the nuclear power equipment— and therefore his work is administrative and thus 'directly related to management policies or general business operations of the employer.'" *Id.* The court maintained, "[w]e have rejected

the argument that all work that is not production work is automatically directly related to management policies or general business operations of the employer." *Id.* (quotation omitted).

Here, Plaintiffs' argument that Investigators "are engaged in Defendant's day-to-day production work" is unpersuasive. Doc. No. 80 at 28. They maintain that GEICO "is in the business of selling insurance policies and handling policyholders' claims for coverage." *Id.* According to the Plaintiffs, "SIU, which is part of the Claims Department, is involved in the handling of policyholders' claims through their investigation of the facts surrounding the claim. The role of Investigators fits squarely within the production function." *Id.* at 28-29. GEICO contends that Investigators "do not produce insurance policies. Rather, they support the claims function by investigating suspicious claims and preventing losses due to fraud." Doc. No. 86 at 32. Plaintiffs' attempt to analogize *Desmond* and *Martin* to demonstrate that an Investigator's work is production (rather than administrative) is unconvincing in light of cases that discuss investigators and find that the administrative-production dichotomy does not work in this context.

Courts have recognized that the administrative-production dichotomy is not a useful means of determining if the administrative exemption applies in all instances. *See, e.g.*, *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 402-03 (6th Cir. 2004) (citations omitted) ("The analogy—like various other parts of the interpretive regulations—is only useful to the extent that it is a helpful analogy in the case at hand; that is, to the extent it elucidates the phrase 'work directly related to the management policies or general business operations.' This dispute must therefore be resolved using other analytical tools set out in the regulations for resolving this question."); *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1126 (9th Cir. 2002) (citation omitted) ("As this case suggests, the administration/production dichotomy is useful only to the

extent that it helps clarify the phrase 'work directly related to the management policies or general business operations.' Indeed, the regulation from which the dichotomy derives does not stand alone. Rather, the administrative exemption is explicated in a series of interpretive regulations, of which 29 C.F.R. § 541.205(a) is only one, attempting to clarify the elusive meaning of the term 'administration.'").

For example, in *Foster*, the District Court for the Southern District of Ohio rejected the plaintiffs' claim that as "special investigators" and "senior special investigators" of Nationwide Mutual Insurance Company, they were involved in production work. The court found that "[i]nsurance companies, like Nationwide, are in the business of creating and marketing insurance policies to the public." *Foster*, 695 F. Supp. 2d at 756 (citation omitted). The court held that "[b]ecause Nationwide's Special Investigators are not involved in either the underwriting or selling of such policies—Nationwide's 'product'—they cannot be fairly characterized as 'production' employees." *Id.* (citation omitted). The court concluded that the administrative-production dichotomy was an inadequate investigative tool for resolving the issue and found that "the determinative issue is whether the primary duty of Special Investigators directly relates to the 'servicing' of Nationwide's business." *Id.*

The *Foster* court's approach is also logical here. The administrative-production dichotomy analysis fails to suggest an obvious conclusion as to whether the Investigators' work can be classified as administrative or involving production. The test does not establish a bright-line where a court can determine if the work should be classified as production or administrative. Because it appears that the GEICO Investigators do not underwrite or sell policies, they are likely not engaged in production work for GEICO.

**ii. The Investigators' Primary Duty is Likely Directly Related to the Management or General Business Operations of GEICO.**

The Plaintiffs' primary argument is that the DOL, through its regulations and Opinion Letters, has determined that Investigators do not qualify for the administrative exemption. Plaintiffs' reliance on authorities governing public sector employees to argue that Investigators are non-exempt employees is not persuasive.  FLSA regulations provide that the exemptions in the regulations do not apply to:

> police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, ***investigators***, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, ***who perform work such as*** preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; ***conducting investigations or inspections for violations of law***; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; ***interviewing witnesses***; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. § 541.3(b)(1) (emphasis added).  Plaintiffs contend that the regulations addressing investigators apply to both public and private investigators.  They argue that "[n]othing in the plain language of § 541.3(b)(1) limits its scope to public-sector employees."  Doc. No. 80 at 30. Furthermore, the Plaintiffs suggest that because "inspectors" are listed next to "investigators" in the regulations, there is a clear indication "that private, as well as public employees are contemplated by this regulation." *Id.*

The Plaintiffs also contend that "the DOL has consistently concluded that the job of an investigator, private or public, is not administrative."  Doc. No. 80 at 23 (citing Dept. of Labor, Wage & Hour Div., Opinion Letter, FLSA 2005-21, 2005 WL 3308592 (Aug. 19, 2005) (discussing employer who provided contract background investigations for government security

clearances); Dept. of Labor, Wage & Hour Div., Opinion Letter, 1998 WL 852783 (April 17, 1998) (employer who "enforce[d] State liquor law statutes and regulations"); Dept. of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 971811 (Sept. 12, 1997) (employer who conducted investigations "as its business function")). Plaintiffs' argument fails for at least three reasons.

First, Plaintiffs' interpretation of 29 C.F.R. § 541.3(b)(1) as including private and public investigators appears incorrect. As discussed by the District Court for the Southern District of Ohio in *Foster*, when one reads the reference to investigators "in the context of the entire regulation, it is clear that the regulation pertains to law enforcement and safety personnel—not those who perform investigative duties in the private sector." 695 F. Supp. 2d at 757 (citation omitted). The *Foster* court concluded that "[b]ecause of the missions of their respective governmental agencies and departments, the individuals delineated in this regulation are most accurately characterized as 'production' employees." *Id.* at 758. The plain language of the regulation suggests that the regulation contemplated a public-sector employee in a public safety capacity and not a private insurance investigator.[4]

Second, this Court cannot simply rely on the job title of "Investigator" as outcome-determinative as to whether an employee is administratively exempt. *See Foster*, 695 F. Supp. 2d at 756 ("The DOL, however, does not treat an employee's job title as a sufficient basis for determining whether he or she is exempt under the FLSA."); 29 C.F.R. § 541.2 ("A job title

---

[4] Additionally, a different section of the regulation suggests that public sector inspectors and investigators are categorized differently from private inspectors. *See* 29 C.F.R. § 541.203(j) ("Public sector inspectors or investigators of various types, such as fire prevention or safety, building or construction, health or sanitation, environmental or soils specialists and similar employees, generally do not meet the duties requirements for the administrative exemption because their work typically does not involve work directly related to the management or general business operations of the employer.").

alone is insufficient to establish the exempt status of an employee.  The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.").

Finally, the DOL "[r]elied on the administrative-production dichotomy in rendering each of these opinions," and it "found that the investigators who work for these employers were not subject to the administrative exemption."  *Foster*, 695 F. Supp. 2d at 757.  As discussed above, the administrative-production dichotomy does not offer a clear means of determining if the Investigators here are exempt.  Furthermore, as discussed in *Foster*, the Opinion Letters on which the Plaintiffs rely "are not particularly helpful to [the] inquiry into whether [Investigators] satisfy the second element of the administrative exemption . . . . [because,] [m]ost notably, in each of the Opinion Letters referenced by Plaintiffs, investigative services—in one form or another—comprised the core business function of the employer."  *Id.*

Still, the investigative duties of an Investigator seem to be "directly related to" GEICO's "general business operations," because they, at the very least, "assist" GEICO claims adjusters in "adjusting . . . claims."  *Id.* at 758.  GEICO concedes that Investigators "do not produce insurance policies"; however, it points out that Investigators "support the claims function by investigating suspicious claims and preventing losses due to fraud."  Doc. No. 86 at 32.  As the court concluded in *Foster*, "[b]ecause the DOL regulations and case law deem claims adjusting to be administrative work, it follows that investigative services performed in direct furtherance of claims adjusting efforts is administrative work, as well."  695 F. Supp. 2d at 758.

### b. The Investigators Do Not Exercise Discretion and Independent Judgment as to Matters of Significance.

Even if the Investigators' work is administrative in nature, this does not end the inquiry.  Rather, the third and final element of the administrative exemption must be satisfied.  That is,

whether an Investigator, in performing his or her primary duty, exercises "discretion and independent judgment" regarding "matters of significance."   29 C.F.R.  §  541.200(a)(3). Plaintiffs argue that the primary job duty of conducting investigations "does not involve the exercise of discretion and independent judgment with respect to matters of significance."  Doc. No. 91 at 2.

### i.  The Investigators Exercise Discretion and Independent Judgment.

"Discretion and independent judgment," for the purposes of the administrative exemption, generally "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).  The "phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises."  *Id.* § 541.202(b).  "Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to:"

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* An employee, however, does not exercise discretion and independent judgment if his or her work amounts to nothing more than "the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id.* § 541.202(e). Although "[t]he exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision . . . , employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *Id.* § 541.202(c). Indeed, "decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." *Id.*

GEICO asserts that the Investigators "exercise discretion and independent judgment throughout their investigations." Doc. No. 86 at 38. GEICO asserts that Investigators expand the scope of investigations and decide when investigations are complete; decide what investigative methods to use; inspect property damage and clinics and review claims files and medical records; question policyholders, claimants and other witnesses, in recorded interviews or deposition-like Examinations Under Oath ("EUOs"); use their judgment to probe inconsistencies and ask follow-up questions; observe demeanor and listen to tone of voice to gauge credibility; make findings about credibility, the cause of accidents, the cause and extent of damage, excessive treatment and other issues and report their findings to adjusters, law enforcement and underwriting; and resolve whether a claim is fraudulent. *Id.*

Plaintiffs concede that Investigators exercise "limited discretion" in the course of investigations, *see* Doc. No. 91 at 21; Doc. No. 80 at 2 ("Plaintiffs acknowledge that they exercise some limited discretion and independent judgment . . . ."); however, Plaintiffs stress that

such discretion does not "relate to matters of significance," as required for the administrative exemption to apply to their position.

### ii. The Investigators' Discretion Does Not Bear on "Matters of Significance."

The term "matters of significance" refers "to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). In *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896 (D. Minn. 2010), the court observed that "[a]ll employees exercise some discretion in deciding how to perform their jobs, and the way in which they exercise that discretion likely will affect matters of significance." *Id.* at 908. Specifically, for "claims investigators, how they exercise their discretion in conducting an investigation will impact or affect how a claims adjuster . . . decides the significant matter of the value of the claim. But an exercise of discretion that impacts or affects a matter of significance is not exercising discretion with respect to a matter of significance. If the rule were otherwise, all employees would arguably meet the third element of the definition of administrative employees." *Id.* (finding that an employer hired by insurance companies, third-party administrators, and law firms to investigate suspect claims "failed to demonstrate a triable issue as to whether the duties of claims investigators include the exercise of discretion and independent judgment with respect to matters of significance" where "(1) [the employer's] written guidelines explain in great detail how claims investigators should conduct an investigation, (2) the claims investigators are required to obtain all the facts regardless of their impact, and (3) the claims investigators do not include their own opinions, conclusions, or recommendations regarding the decision whether to pay or deny the claim.").

The court in *Ahle* relied in part on *Fenton v. Farmers Insurance Exchange*, 663 F. Supp. 2d 718 (D. Minn. 2009), which involved "special investigators who investigate potentially fraudulent insurance claims" for their employer, Farmers Insurance Exchange. *Id.* at 721. The

investigators' "primary role" was "simply to gather facts and present them for someone else to analyze." *Id.* at 727. The court found "nothing in the residual discretion available to investigators that is sufficient to justify exemption." *Id.* at 726-27. The court in *Fenton* explained that, "although an employee need not perform all of the duties of claims adjusters listed [at 29 C.F.R. § 541.203(a)] to qualify as exempt [. . . ,] that list includes a variety of significant, discretion-laden activities that are undisputedly not present here, such as 'negotiating settlements' and 'making recommendations regarding litigation.'" *Id.* at 727. There, the investigators' job duty was to "gather facts" for claims adjusters and they were "formally barred from presenting their opinions about how to handle claims in their written reports." *Id.* Like the plaintiffs in *Fenton*, Plaintiffs in this case were "trained and directed" by GEICO "to specifically omit all opinions from their written reports to the Claims Adjusters." Doc. 80 at 36.[5]

GEICO argues that *Fenton* and *Ahle* "are both distinguishable and unpersuasive on the discretion and independent judgment issue. They are distinguishable because GEICO does not impose the same restrictions on its investigators as the defendants in those cases. . . . The evidence in this case shows that GEICO's investigators report findings concerning fraud or lack thereof, credibility, caused accidents, excessive treatment and other similar issues." Doc. No. 86 at 44. GEICO emphasizes that "[f]raud is a major problem in the insurance industry," and if a

---

[5] The court in *Fenton* discussed and relied in part on *Gusdonovich v. Business Information Co.*, 705 F. Supp. 262 (W.D. Pa. 1985), a case involving an investigator for a company that investigated and collected information for insurance companies. *Id.* at 263. The investigator's "primary duty was the investigation of insurance claims," and his duties included "the search of public records, the serving of subpoenas and orders, surveillance, [and] interrogation of witnesses." *Id.* The court noted that the investigator was subject to oversight by a supervisor, and found that the investigator was merely "applying . . . knowledge and skill in determining what procedure to follow"; not exercising "discretion and independent judgment." *Id.* at 265. Thus, the court found "as a matter of law that the plaintiff was not a bona fide administrative employee within the meaning of the statute and regulations." *Id.*

claim is suspected of being fraudulent, it is assigned to the SIU "to resolve the indicia of fraud." *Id.* at 1.  GEICO asserts that the Investigators engage in "loss prevention" because "investigation and reporting of fraudulent claims to law enforcement is a legal and regulatory compliance function."  *Id.* at 32-33.  GEICO also highlights that the Investigator "is able to generate a withdrawal of the claim during the interview or EUO."  *Id.* at 12.

But "an employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will suffer financial losses if the employee does not perform the job properly."  29 C.F.R. § 541.202(f).  Indeed, in a matter involving the status of federal investigators under Office of Personnel Management ("OPM") guidelines, a court concluded that fraud investigators were non-exempt.  *Adams v. United States*, 78 Fed. Cl. 536, 554 (Fed. Cl. 2007).  There, the investigators were employed by the Office of Inspector General ("OIG") in the Department of Housing and Urban Development ("HUD").  *Id.* at 537. The investigators' "primary duty was investigating fraud or violent crimes affecting HUD programs."  *Id.* at 550.  The court noted that "these investigations provided substantially important funds for the furtherance of HUD's mission, [but] there is no evidence that line managers in HUD programs used those criminal investigations in the same way they used computer networks or purchasing systems to support their management functions."  *Id.* at 554. Referencing both OPM and DOL regulations,[6] the court found that the "defendant . . . failed to overcome the presumption that plaintiffs are entitled to benefit from FLSA's overtime requirements by proving that plaintiffs were subject to the administrative exemption."  *Id.*

---

[6] The "difficult" question before the *Adams* court was "whether plaintiffs' primary duty qualifies as a supporting service under FLSA's administrative exemption.  The OPM regulation describing the primary duty test relied upon by defendant requires that administrative employees work as supporting service specialists."  *Adams v. United States*, 78 Fed. Cl. 536, 551 (Fed. Cl. 2007) (citing 5 C.F.R. § 551.206 (OPM regulation) and later citing 29 C.F.R. § 541.201 (DOL regulation)).

Plaintiffs assert that "Investigators attempt to confirm the facts surrounding a claim.  This means that they find facts that tend to support or contradict the suspicion identified by ICE or the Claims Adjuster.  It does not mean that Investigators determine whether fraud occurred.  Instead, Investigators find facts that allow Claims Adjusters to determine whether enough suspicion remains to warrant denial of a claim."  Doc. No. 80 at 40.  Regulations and case law suggest that the fact that Investigators note that certain claims could be fraudulent does not in itself establish that their discretion bears on "matters of significance."

In the Fourth Circuit, the FLSA's administrative exemption is "narrowly construed," and the Court concludes that GEICO has failed to demonstrate by clear and convincing evidence that Investigators fit within the narrow administrative exemption.  Although they appear to perform administrative tasks and exercise some discretion during investigations, the Investigators' discretion does not bear on matters of significance.  *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 692 (4th Cir. 2009) ("FLSA exemptions are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within [the exemptions'] terms and spirit.'") (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

## II.     Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 80), and deny Defendants' Cross-Motion for Summary Judgment (Doc. No. 86).  A separate order follows.


Date: <u>November 29, 2012</u>                          /s/
                                   ROGER W. TITUS
                                   UNITED STATES DISTRICT JUDGE